THE ERIE CATTLE COMPANY v. W. W. GUTHRIE *et al.*
No. 8388.

1. WRITTEN AGREEMENT, *Parol Evidence to Explain.* Where a memorandum of an agreement is indefinite and ambiguous in its terms, parol proof may be received to show the surrounding circumstances under which it was made, and to explain the intent and meaning of the parties.

2. EVIDENCE *Supports Findings.* Upon an examination of the record, it is *held* that the testimony supports the findings that were made, and that the pleadings warrant the judgment which was rendered.

*Error from Chase District Court.*

ACTION by The Erie Cattle Company against W. W. Guthrie and another to recover damages for an alleged breach of contract. Judgment for defendants. The plaintiff company brings the case to this court. The facts are stated in the opinion, filed May 9, 1896.

*C. N. Sterry*, and *E. A. Austin*, for plaintiff in error.
*W. F. Guthrie*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. : The Erie Cattle Company, of Arizona, entered into an agreement with Guthrie & Byram to furnish pasturage for 600 head of cattle at a stipulated price, and the following is a written memorandum of the agreement :

" EUCLID RANCH, CHASE COUNTY, KANSAS, February 17, 1890.— Guthrie & Byram, party of the first part, of Chase county, Kansas, and the Erie Cattle Company, of Cochise county, of Arizona territory, party of the second part : The party of the first part agrees to furnish grazing lands for 600 steers at $1.75 per head per grazing of 1890.    We also agree to keep the said cattle in inclosed pastures, and to furnish not less than 3½ acres per head, with sufficient salt and water.    We also agree to help receive and deliver said cattle from the nearest railroad station, and furnish board for one man while he may be here looking after the said cattle.    The party of the second part agrees to furnish 600 steers for the grazing season of 1890, at $1.75 per head.    The payment per the said grazing lands shall be $150 in cash, and the balance when the said cattle are removed from the pastures.

GUTHRIE & BYRAM.
ERIE CATTLE COMPANY,
B. F. Brown, Pres."

A large number of cattle were placed by the company in the pastures of Guthrie & Byram, and at the end of the grazing season and after the charges for the grazing had been paid, the cattle company brought an action to recover damages for the breach of the contract, alleging that the defendants had failed to furnish sufficient water under the contract, which resulted in diminishing the weight and value of the cattle.    In their answer, the defendants alleged that the plaintiff represented that the cattle to be furnished were of a high grade, of a quiet disposition,

such as could be restrained within the fences around the defendants' pastures ; that they would be brought from Arizona at a suitable time for putting them on grass ; but, instead of their being as represented, they were wild, western cattle, unused to restraint or control, and were put in the pastures before the commencement of the pasture season. It is alleged by way of counter-claim, that during the time the cattle were held in the pastures in advance of the pasturage season they tramped and injured the pastures to the damage of the defendants in the sum of $350. There is also a claim for an additional allowance of damages because of the wild nature of the cattle, making it more difficult and expensive for the defendants to perform their part of the contract. Upon the trial, which was had with a jury, the verdict was in favor of the defendants, the jury finding that the water-supply was sufficient ; that the injury and damage from holding the cattle on defendants' land before the beginning of the grazing season was $105.25 ; that by reason of the wild nature of the cattle the defendants were put to extra trouble and expense in caring for them and for injury to their fences in the sum of $18.75 ; and a further allowance of $15 was made for the extra care and expense of the defendants in delivering the cattle, because they were not the kind of cattle which the cattle company represented them to be.

Numerous objections are urged to rulings made in the course of the trial, many of which are deemed to be immaterial. The findings of the jury appear to be well sustained by the testimony, and the answer of the defendants warrants the judgment that was rendered. No error was committed in excluding the evidence of McNair as to the motive that he had for shipping some of the cattle to market before the end

the season, nor is there any good ground to complain of the testimony concerning the statements made by him with reference to the cattle. He was an officer of the company who had the control and management of the cattle in Kansas, and the statements made by him with respect to their quality and disposition were admissible in evidence under the issues as made.

The principal complaint is of the admission of parol evidence, which, it is claimed, varied and enlarged the written contract of the parties. Testimony was received that the president of the company represented that the cattle to be placed in the pastures were high-grade cattle, quiet in disposition, and not wild cattle of the kind usually found in the western country. An examination of the writing discloses that it was only a memorandum of an agreement, and without a resort to the surrounding circumstances or parol explanation would be very indefinite and ambiguous. Upon its face it does not indicate where the grazing lands were situate, whether the steers were 1, 2, 3, 4 or 5 years old, nor whether they were quiet and such as could be kept within inclosures, or were wild and uncontrollable. Although there is an agreement to help receive and deliver the cattle from the nearest railroad station, the point where they were to be received or from which they were to be delivered is not named. Other features of the agreement are equally indefinite, and hence the necessity for parol testimony to explain the intent of the parties. While, as a general proposition, parol testimony is inadmissible to contradict or vary the terms of a written contract, it is true that all written contracts may be examined by the light of extrinsic and surrounding circumstances. Where the writing is indefinite and ambiguous, parol proof may be received to show the

relations and the real meaning and intent of the parties. It cannot be carried to the extent of showing anything contrary to what is expressed in the writing, or what may be fairly and legally implied from it. Under the circumstances, we think explanatory testimony was admissible, and also that it was competent to prove any independent parol agreements contemporaneously or subsequently made. The charge of the court was full and fair, and although some objection is made we think the case was fairly presented to the jury.

Finding no errors in the record, the judgment of the district court must be affirmed.

All the Justices concurring.