No. 29,946.

THE CHICAGO COLD STORAGE WAREHOUSE COMPANY, *Appellee*, v. THOMAS J. MURPHY and RUSSELL WILCOX, Partners doing business as THE MURPHY-WILCOX COMPANY, *Appellants*.

(4 P. 2d 416.)

Opinion filed November 7, 1931.

W. E. Atchison and B. J. Lempenau, both of Topeka, for the appellants.

Thomas F. Doran, Clayton E. Kline, Harry W. Colmery and M. F. Cosgrove, all of Topeka, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by a cold-storage company in Chicago to recover from the defendants, partners in the produce business in Topeka, a balance for freight, demurrage and storage paid on three carloads of turnips shipped by the defendants to Chicago, after giving credit for the amount for which the turnips were sold. The answer denied the authority of the plaintiff to pay the freight on any of the cars and to sell or dispose of the turnips in two of the cars, and charged the plaintiff with carelessness and negligence in paying the freight without first inspecting the turnips to determine their condition, unless plaintiff was willing to advance the freight and carry the turnips during the season and until the price would advance, which was alleged to have been the usual custom among cold-storage warehouses in Chicago at that time. By way of cross petition, defendants claimed from plaintiff the difference between the freight charges and the current market value at the end of the usual season in April, in the sum of $189.72.

The case was tried to a jury and the court at the conclusion of the testimony sustained the motion of the plaintiff for a peremptory instruction in favor of the plaintiff for the reason that the evidence of the defendants had failed to establish a defense to the cause of action of the plaintiff as a matter of law, or to establish a cause of action under the cross petition.

Defendants appeal, urging two grounds for reversal, stated in the form of the following questions:

"1. Was the evidence introduced in behalf of the defendants sufficient to constitute a defense and to justify a submission of the case to the jury?

"2. Did the court err in instructing the jury to return a verdict for the plaintiff?"

There is no controversy as to the amount of freight, demurrage and storage paid and charged, nor as to the amount received for the two carloads that were sold, nor that the price received was not the best obtainable at that time. So if the appellee had the right to pay the freight and sell the turnips the amount is correct unless by its carelessness and negligence it disregarded the established custom of cold-storage warehouses in not holding the turnips in

storage during the season when the price did in fact advance to such a figure as would have left a margin for the appellants over the freight and other charges.

The trial court, by directing a verdict, in effect held as a matter of law that the appellee did have the right and authority to pay the freight and sell and dispose of the turnips, and that the appellants as a matter of law had not established a custom to hold such goods during the season for the advanced price, nor carelessness or negligence in paying the freight and disposing of the goods at a low market price.

The appellants shipped three carloads of turnips from Topeka to Chicago the latter part of October, 1927, billed to themselves with instructions to notify McIlvain, a produce dealer in Chicago, who had purchased them before shipment. On their arrival he refused to accept them for certain reasons, and appellants then wired appellee to accept and unload them for cold storage. There was an exchange of several telegrams, all of which are material, and they are as follows:

*"Chicago Cold Storage Co.:* OCTOBER 31, 1927.

"Have instructed Santa Fe to set to you for cold storage three cars turnips SFRD seven four nine three SFRD ten naught eight six FGEX nineteen four seven four this authorizes delivery kindly unload at once have car seven four nine three government inspected stating percentage under two half and three half inches. Murphy-Wilcox Co."

"Nov. 2, 1927.

"Three cars rutabagas arrived. While unloading found them in bad condition due to leaky rot. Will not carry in storage. Should have disposition for them at once. Please wire. Chicago Cold Storage Warehouse Co."

"Nov. 2, 1927.

"Your wire not clear whether three cars turnips unloaded or still in car. Something unusual must happened in transit. No decay in car shipped same time unloaded cold storage St. Louis. Kansas City, have informed Santa Fe here. They will have representatives inspect. If you haven't already done so, notify Santa Fe Chicago get thorough inspection all three cars. Immediate action if not unloaded. When were cars set for you? Answer. Murphy-Wilcox Co."

"Nov. 3, 1927.

"Have Moorhead, Railroad, Government inspection. Car ten thousand eighty six (10086) and nineteen four seventy four (19474) unloaded fair condition. Car seventy four ninety three (7493) on track bad should be dumped. Santa Fe received reconsigning orders Tuesday morning. Cars were set out to our warehouse same midnight. Wire instructions. Chicago Cold Storage Warehouse Co."

"Nov. 4, 1927.

"Reply our wire the third asking disposition car seven four nine three (7493) demurrage five dollars daily starting Sunday. Chicago Cold Storage Warehouse Co."

"Nov. 5, 1927.

"Have you paid freight. If not abandon to Santa Fe Railroad seven four nine three (7493). Murphy-Wilcox Co."

"Nov. 5, 1927.

"Freight paid. Cannot abandon. Wire disposition of car. Chicago Cold Storage Warehouse Co."

"Nov. 5, 1927.

"All three cars turnips there under your control. You make disposition. Murphy-Wilcox Co."

One carload was dumped and we are not now concerned about it except part of the freight paid was on it. That car seems to have been the specific subject of three of the telegrams. Two days after the sending of the last telegram the appellee wrote the appellants the following letter:

"*Murphy-Wilcox Co., Topeka, Kan.:*                    Nov. 7, 1927.

"GENTLEMEN—We are to-day drawing draft on you through the Central National Bank of Topeka, Kan., in the amount of $452.51, covering freight, storage and inspection charges.

"Freight charges represent an actual outlay of cash and we should be reimbursed for them immediately.

"Kindly honor our draft promptly upon presentation; otherwise, we will be obliged to sell your rutabagas to satisfy our lien against them. Should there be anything over our charges, we will mail you our check for same. On the other hand, if there is a deficit, we will expect you to make it good. We are inclosing herewith bill for the above amount.     Very truly yours,

"WAK:CS     Encl.                    CHICAGO COLD STORAGE WHSE. Co."

The appellants insist that there never was any authority given appellee to pay the freight on any of the cars, and particularly the one from which the turnips were dumped, and that the last telegram authorizing appellee to make disposition of the turnips referred only to the one car to which alone the three preceding messages related. This contention is fully met and disposed of as far as the question of freight is concerned by the fact that after appellants were informed that the freight had been paid, they proceeded by giving further directions and orders, which in effect ratified that part of the acts of their agent and they thereby acquiesced therein. We have some difficulty in reaching the conclusion urged by the appellants that the last telegram refers only to the one car the contents of which were dumped. It said, "All three cars turnips there under your control.

You make disposition." The one car was the exclusive subject of the three preceding messages, but then why refer to "all three cars" if it was only a continuation of negotiations as to the one car? Appellants suggest this telegram is somewhat ambiguous and that where any doubt exists as to its true meaning the earlier communications should be considered in connection therewith to explain or solve any such doubt, if possible, together with the surrounding circumstances which in this case would include the condition of the turnips at the time, the market condition, the expense of unloading and carrying them in storage, as well as the custom among warehouses of handling such products, following the course outlined and approved in *Cattle Co. v. Guthrie*, 56 Kan. 754, 44 Pac. 984; *Bank v. Brigham*, 61 Kan. 727, 60 Pac. 754; and 22 C. J. 1184.

The first telegram from the appellee stated something as to the condition of the turnips when it said: "While unloading found them in bad condition due to leaky rot. Will not carry in storage." The next one reported an inspection made by a government officer and that two cars were unloaded and in fair condition.

Appellants say the last message on which the appellee relies was based upon the misleading information given by the appellee in its first message, that the turnips were in bad condition and would not carry in storage, which would justify the giving of such a sweeping message. But this is not in harmony with the theory that it only applied to the one car. Besides, appellants had the further information of the intervening message saying two cars were unloaded and in fair condition. It is suggested that as the two cars were already unloaded and in cold storage, no further order as to them was necessary and there was nothing to be disposed of but the contents of the one remaining car when the last message was sent by appellants.

We think with the earlier information that the turnips were in bad condition, unfit to carry in storage, later modified after government inspection to be in fair condition as to two cars that were unloaded, the appellants naturally and intentionally made the last message cover all three cars and authorized the appellee to make disposition of all of them, which would, of course, include the matter of leaving them or some of them in cold storage if thought best— "All" are "under your control." It was, under the circumstances of distance and limited information, reposing a confidence in the ap-

pellee and its business judgment and discretion, but none the less a full authorization for disposal of "all three cars."

Two days after the sending of this final telegram the appellee wrote the letter, above set out, requesting appellants to honor a draft made on them for the freight and other expenses incurred, and stating that if not honored the turnips would be sold to pay the charges. It is said this letter shows a waiver or disregard of any authorization in the telegram to sell and dispose of the turnips, if such had been given, and a separate announcement of terms by the appellee depending not upon the condition of the turnips, the market price or other circumstances, but solely upon the payment of or failure to pay the draft. We have already said the question of the payment of the freight without authority was waived by the appellants after full knowledge by their executing further orders and directions concerning the disposition of the turnips (13 C. J. 609). So this letter concerning freight and other charges only was not in disregard of the sweeping order of disposition given because of any and all surrounding and existing circumstances. The evidence shows the two carloads of turnips in storage were sold eleven days after the date of the letter for the highest price obtainable at that time, which was very much less than the market price in April, and that the turnips remained in cold storage until after the middle of February, when they were inspected and found to have been in fair condition.

The evidence introduced by the appellants was as to the condition of the turnips in February, the increased market price of them, then and later, and the custom of cold-storage warehouses in Chicago at that time to not accept shipment unless they were willing to pay the freight and wait for reimbursement until the vegetable could be sold on a suitable market during or at the end of the season. If this evidence constituted a defense to the cause of action of the appellee, or constituted a cause of action on the cross petition, it should have gone to the jury. But the trial court held that as a matter of law it did not constitute such a defense nor a cause of action on the cross petition, and we think this ruling was correct because a custom, however well established, will not defeat, disturb or set aside a positive and definite order as given in this case by the appellants after full knowledge of the freight having been paid, where there is no ambiguity or uncertainty involved. The only ambiguity and uncertainty in this case suggested does not concern or relate to the payment of freight. Customs only affect relations of

parties in the absence of agreements or specific arrangements and where an ambiguity or uncertainty exists.

"Where the terms of an express contract are clear and unambiguous, they cannot be varied or contradicted by evidence of custom or usage, and this is true whether the contract is written or verbal." (17 C. J. 508.)

"The proper office of usage or custom is to explain technical terms in contracts to which peculiar meanings attach; to make certain that which is indefinite, ambiguous or obscure; to supply necessary matters upon which the contract itself is silent; and generally to elucidate the intention of the parties when the meaning of the contract cannot be clearly ascertained from the language employed." (*McSherry v. Blanchfield,* 68 Kan. 310, syl. ¶ 3, 75 Pac. 121.)

We think the peremptory instruction was properly given. The judgment is affirmed.