HURD et al. v. WHITSETT.

1. The statute (R. S. 1868, Forcible Entry and Detainer) recognizes a tenancy from month to month; *held,* that the evidence in this case disclosed a tenancy from month to month.

2. Where there was a holding over by a tenant from month to month, after conveyance by the original lessor, with the assent of both the landlord and tenant; *held,* that such holding over was upon the same terms as the prior letting, and, in the absence of a new lease, the character of the tenancy continued the same.

3. The word "terms," in the statute (R. S. 1868, p. 333, § 7), cannot be construed as giving a landlord authority, by a mere notice to a tenant holding from month to month, to enlarge the *term* or duration of the tenancy.

*Error to County Court of Arapahoe County.*

WHITSETT, the plaintiff in the court below, based his action upon the seventh section of chapter thirty-five of the Revised Statutes, concerning forcible entry and detainer. The declaration was substantially as follows :

First count : " Plaintiff complains that the defendants are indebted to him in the sum of $700, for that on June 1st, 1874, Frank L. Moore possessed lot 28, in block 20, East Denver, Colorado, with a certain building thereon ; that on that day the said Moore rented said building to the defendants for one month certain, and from month to month thereafter ; that by such demise the defendants retained the possession of said premises until March 26th, 1875 ; that on January 25th, 1875, the said Moore conveyed said premises to the plaintiff ; that by such conveyance the defendants became tenants to the plaintiff at a tenancy from month to month ; that on March 26th, 1875, the plaintiff gave notice in writing to the defendants that on and after the month of April, he should consider them his tenants for one year, at a monthly rental of $175 per month, payable on the first day of every month ; that failing to consent to such terms and time, they should surrender said premises at the expiration of the month of April, the defendants continued in possession of said premises, and still possess the same ; that thereby the defendants became tenants to the plaintiff for one year certain next after said month of April, and became liable to pay the plaintiff $175 per month during said term ; that on November 2d, 1875, $700 for said rent for the months of August, September, October and November, was due to the plaintiff.

" Second count : That the plaintiff on May 1st, 1875, did demise to the defendants one certain other brick building on lot 28, block 20, in East Denver, for one year certain, commencing on the day last aforesaid, for the monthly rent of $175, by force whereof said defendants possessed said

premises until November 1st, 1875, at which time $700 was due and owing to the plaintiff from defendants.

Breach.—That defendants, though often requested, have not paid said sum of money or any part thereof."

To the above declaration defendants pleaded : First, *nil debit ;* and, second : "That after the expiration of said month of April, the defendants continued to occupy said premises as tenants from month to month until July ; that the plaintiff received the rent for said months from the defendants, as tenants from month to month ; that on the first day of July they gave notice to the plaintiff that they would quit the possession of said premises at the end of the month of July ; that at the end of said month they did vacate said premises, and offered the keys thereof to the plaintiff, and have not since occupied any part of said premises."

" Replication.—That defendants did not at the expiration of the month of April continue as tenants from month to month until the end of July ; that defendants did not pay the rent of said premises as tenants from month to month, and that plaintiff did not receive the rent from defendants as tenants from month to month."

Upon the character of the tenancy the court below gave, among others, the following instructions, which are adverted to and approved in the opinion :

"4. If the jury believe, from the evidence, that the defendants, while in possession of the premises under Moore and Whitsett respectively, were accustomed, prior to March 26th, 1875, to pay rent for said premises monthly in advance, that is *prima facie* evidence that they were holding as tenants from month to month, and raised a presumption of a monthly tenancy, which the jury must be governed by, unless overthrown by other testimony.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

" 6. If the jury believe, from the evidence, that the original lease of the defendants from Moore was for an unlimited or indefinite time, but with the reservation of a monthly

rent, this is considered in law as creating a monthly tenancy, and the tenants under such lease would be tenants from month to month."

The plaintiff below recovered judgment for the sum of $700, debt, nominal damages, and costs of suit. To reverse this judgment the defendant sued out this writ of error.

Mr. JOHN W. BLACKBURN and Messrs. BUTLER & WRIGHT, for plaintiffs in error.

Messrs. WELLS, SMITH & MACON, for defendant in error.

STONE, J. Two questions arise for our determination : *First*, what was the character of the tenancy as to duration ; was it from month to month? *Second*, under the notice given, did the statute operate to change such character of the tenancy ?

I. The first question is to be determined by the terms of the contract, if there was a contract respecting the term at all ; if not, then by implication, based upon whatever facts in the whole case exist from which a legal inference fixing the term may be deduced.

There was no written lease, and the evidence shows no express contract as to the length of term beyond the first month.

Whitsett testifies that "the younger Hurd said they had the property from month to month at $175 per month ; I received rent from defendants up to August 1, 1875, at that rate; * * * I wanted the defendants to rent the property for a year, and they always said they wanted to rent it from month to month ; * * * they refused to lease the premises by the year ; * * * I accepted them as tenants on the same terms as they had of Moore ; I read the notice to Hurd, and he got huffy and said they were to have the store as long as they wanted it."

Moore deposes : * * * "D. Hurd & Sons' lease was to commence in August, 1873 ; I made the lease through an agent ; * * * John Clough & Co. were my agents ;

\* \* \* I called at the store and agreed with Daniel Hurd that they could have the place, but nothing definite was said as to time or terms; the defendants continued to occupy the building until I sold it to Richard E. Whitsett in January, 1875; they paid the rent monthly in advance; after the first term expired I demanded a larger rent, but accepted the same that defendants had been paying rather than have them move out; no definite agreement was made for the future."

Daniel Hurd testified: \* \* \* "Looked for a house to do business in, and found the house in controversy; saw the agent, John Clough, and got the refusal of it; we were to pay $175 per month; I told him I wanted it for a large wholesale grocery business, and wanted a place where we could stay, as it would be ruinous to move, but would take it for no specified time; \* \* \* Moore brought Whitsett to my office and introduced him to myself and son; he said he had sold the property to Whitsett, and we were to pay rent to him; our understanding with Clough was referred to, and the same terms were to be continued; \* \* \* Whitsett came in several times afterward, and wanted us to keep it on the same terms for a year; we refused, and said we would get out as soon as we could \* \* \*."

Charles R. Hurd testified: "Paid the rent monthly in advance; made the bargain with Clough; \* \* \* he wanted us to take a lease, but no time was set; Clough was not to turn us out without notice, and we were not to quit without notice; \* \* \* Moore said he had sold the property to Whitsett, who would be our landlord on the same terms we had before; I don't think any thing was said about the particular terms on which we had held the property \* \* \*."

Under the state of facts as disclosed by this testimony, we must hold the tenancy to have been a tenancy from month to month.

The general rule at common law is, that a tenancy for an indefinite time, or even for any aliquot part of a year, as

stated in some of the books, is to be considered a holding from year to year. A holding merely at the will of the landlord, according to the ancient meaning of the term "tenancy at will," is an estate unknown in modern times, unless where created by express agreement between the parties, or by clear implication. All such tenancies are, for the purpose of a notice to quit, deemed to be tenancies from year to year. 1 Wash. Real Prop. 589; Tyler's Eject. and Adv. Enj. 212. And where a tenant for a year or for years holds over after the expiration of his term, with the assent of his landlord, the holding is implied to be from year to year. But where the term is for a shorter period than a year, according to the current of authorities, both English and American, the holding over is implied to be for a like term, and the notice to quit is determined thereby, and is sufficient if it equal the length of the term or the interval between the times of payment of rent. Taylor's L. & T., § 478; Tyler's Eject. & Adv. Enj. 243; 1 Wash. Real Prop. 610; 1 Greenl. Cruise, 269, n. 2; *Noel v. McCrary*, 7 Cald. 627; *Schuyler* v. *Smith*, 51 N. Y. 309; 10 Am. Rep. 609.

And the reservation of rent and its payment at stated periods, as for a year or month is, in the absence of express agreement as to length of the lease, one of the principal criterions to determine the duration of the term. Taylor's L. & T., §§ 56, 57, 61; *Blumenberg* v. *Myers*, 32 Cal. 93; *Skaggs* v. *Elkins*, 45 id. 158; *Coffee* v. *Lunt*, 2 Pick. 76; *Rich* v. *Bolton*, 46 Vt. 84; 14 Am. Rep. 615.

In the case at bar, the defendants below, as they themselves testify, refused to accept a lease for a year, or to consider their tenancy as one from year to year. The rent was a fixed sum per month, and paid each month in advance. Our statutes recognize a monthly tenancy as distinct from one from year to year. R. S., p. 336, § 18.

Moore, the first lessor, in his testimony says: "They paid the rent monthly in advance. After the *first term expired*, I demanded a larger rent," etc.

Since the only evidence as to the term is that it was a general holding, at a monthly rental, and with payment of rent each month, it is evident that the "first term" referred to by Moore was meant as the first month of the defendant's occupancy, and as the holding over afterward was with the assent of both landlord and tenant, such holding, under the authorities cited above, constituted it a tenancy from month to month upon the same terms as the prior letting. And as no new lease was made, when the premises were conveyed to the plaintiff below, it follows that the character and terms of the tenancy continued the same thereafter. The jury were, therefore, correctly instructed upon this point.

II. Was the notice within the meaning of the statute?

This question is not without some difficulty, inasmuch as it involves a legal construction of the specific meaning of the terms of the statute under which the notice was framed and given.

The language of the section is as follows:

"In all leases of lands or tenements or any interest therein, from month to month, the landlord may, and it shall be lawful for him, upon giving notice in writing to the tenant, at least fifteen days before the expiration of the month, to change the terms of the lease or agreement under which such tenant holds, to take effect at the expiration of the month; said notice, when served upon the tenant, shall of itself operate and be effectual to create and establish as a part of the lease or agreement the terms and conditions specified in said notice, if such tenant shall continue to hold the premises specified in the notice after the expiration of such month."

The following is the notice which was served by the plaintiff below upon the defendants:

"D. Hurd & Son : Take notice that after the month of April, A. D. 1875, you will be considered my tenants of the premises hereinafter mentioned, for the term of one year certain, at a monthly rent of $175, payable on the first

day of each and every month. The premises referred to are the certain brick store building situate on lot 28 in block 20, in the east division of the city of Denver, county of Arapahoe, and Territory of Colorado, which you now hold of me from month to month; failing to assent to hold said premises according to the terms and time above specified, you will surrender and quit the same at the expiration of the month of April.

RICHARD WHITSETT.

DENVER, COL., *March 26th*, 1875."

Since the purpose of the notice was to convert the tenancy from month to month into a tenancy for a year certain, by operation of the statute above quoted, it will be seen that the plaintiff's right to recover for rent claimed to have accrued after the defendants vacated the premises, and had paid up to the time of going out, depends upon the meaning that is to be attached to the word "*terms*" in the section referred to.

*First*—The word "term" or "terms" in its general signification, denotes words, phrases and expressions by which the definite meaning of language is conveyed and determined.

*Second*—The word "terms" in the plural form, in its restricted and legal sense, and as used chiefly in reference to contracts, means the conditions, limitations and propositions which comprise and govern the acts which the contracting parties agree expressly or impliedly to do or not to do. As employed in respect to leases, the word "terms" embraces the covenants and conditions which impose, confer and limit the respective obligations and rights of the landlord and tenant during the continuance of the tenancy; such as the extent and manner of the use of the premises; quiet enjoyment; rent and its amount, mode and time of payment; repairs; payment of taxes, and the like express or implied agreements.

*Third*—The word "term" when used in respect to tenan-

cies has in law a distinct and technical definition, signifying time, duration, and it means not only the limitation of the estate granted as to time; e. g., for life, for years, for a year, a month and the like, as may be specified in the lease; but it signifies the estate also, and interest that passes by the lease. Bouv. Law Dic.; Burrill's Law Dic.; Taylor's L. & T., § 16; Greenl. Cruise, tit. 8, § 6.

In all the text-books, terms and conditions are spoken of *as annexed to the term.*  A term signifying an estate of a certain duration is the subject of the grant; the "terms and conditions," are the incidents of a term granted, and the tenant, unless prohibited by the terms of his lease, may grant a portion of his term to another, and he may in such grant impose other and different terms and conditions from those incident to his own estate.  These propositions serve to illustrate the difference in use and meaning of the words "term" and "terms" when used in respect to the subject before us.

Does, then, the notice provided for in the statute, contemplate a change of the term as well as of the conditions of the lease, or only the terms and conditions annexed to the term?

In giving a judicial interpretation to these terms, we must hold to the technical signification of legal nomenclature, and whatever may have come to be the popular meaning attached to their use, we cannot allow that they are to be interchanged and confounded in meaning when employed in the grant of estates or in relation to tenancies created thereby; nor can we think that the law-makers in framing the statute in question, employed these words in any other than the fixed technical meaning which has been attached by a use as old as the common law; nor can we think, therefore, that it was the legislative intent that by the service of such notice the statute would operate to change the character of the estate by an enlargement of the term or duration of the tenancy.

Let us examine (for *a sociis noscitur*) some other portions

of the same statute as matter to be properly considered *in pari materia*. In defining what shall be sufficient to constitute an unlawful detainer, the 5th section of the act uses the following language:

"If any person shall, with or without force, hold over any lands, tenements, mining claims, or other possessions after the termination of the time for which such lands * * * were let * * * or contrary to the conditions, covenants or terms of the lease * * * or after any rent shall become due according to the terms of such lease," etc. It is evident that the word "terms" is here used in its strict legal sense, and cannot be construed to embrace the duration or term of the lease, for that is designated by the word "time."

Again, in the latter part of section seven, it is declared that the notice shall operate to create and establish "as a part of the lease or agreement the terms and conditions specified in said notice." Not that it shall create a new lease, which would be the case if the term was changed, but create and establish the new terms and agreements specified in the notice *as a part of the lease* or agreement; that is to say, a part of the former lease or agreement.

And in this connection we may be pardoned for observing that in the use of the following language in the notice given to the defendants below, to wit: "Failing to assent to hold said premises according to the terms *and time* above specified, you will surrender," etc. The coupling of the added word *time* with the statutory word *terms* seems to imply a doubt as to whether the word "terms" was broad enough to include the duration of the tenancy ; a doubt possibly suggested by the difficulty which the learned counsel who framed the notice found in trying to divest his mind of the settled meaning of the words used in the statute, and a difficulty attempted to be overcome by making the notice broader than the statute.

And in searching to discover the intent of the law makers, it may not be improper to consider the circumstance that at the time of the adoption of this act, a condition of things

existed common to all new mining countries while the population is alternately increasing and decreasing by immigration and emigration, and towns and settlements are building up and decaying in rapid succession, resulting in this, that the rental price of houses and tenements in these new towns and cities is ever fluctuating. A business house on a particular street or in a particular part of the town may command a high rent one month, and a low rent the next, and *vice versa*, dependent upon the increase or decrease of business in particular parts of town. Where, therefore, the terms of leasing were made short — for the most part monthly — in order to provide against loss to either landlord or tenant, it is not difficult to perceive the utility and fitness of a statute permitting that in case of a monthly tenancy the landlord might provide against a holding over from one month to another by the tenant without a change of terms respecting rent, by giving notice of a change in the rental price or other conditions without being compelled to turn out the tenant by an unconditional notice to quit; and, on the other hand, protecting the tenant by giving him fifteen instead of ten days' notice to quit, providing he should not, by remaining in possession, elect to accept the new conditions.

This statute was first enacted by the legislative assembly of Colorado in 1864, and the seventh section is a transcript of the sixth section of the California act of 1863. Nevada borrowed the same law from California the same year we did, and so far as we have been able to discover, no other State has adopted a similar statute. We cannot find that the courts of Nevada or California have ever given judicial construction to this law upon a question precisely similar to the one before us.

In the case of *Stoppelkamp* v. *Maugeot*, 42 Cal. 316, there was a storehouse rented for a month certain, at twenty-five dollars for the month, and the landlord gave notice to the tenant that, in case he held over the month, the rent would be increased thereafter to $500 per month. Upon the tenant holding over and refusing to pay this increase of rent, suit

was brought to recover it, and the court held, that inasmuch as the statute, which should be strictly construed, authorized the change in the terms of the lease only in cases where the tenancy was "from month to month," it did not apply to a case where the lease was for a month certain. In conceding, however, that the law applied to a tenancy from month to month, the court. say: "But in that event the terms of the lease could only be changed by giving the notice in the mode prescribed by the sixth section, for the time commencing after the expiration of the first month of the tenancy, from month to month."

It seems clear that the court referred the word "terms" to conditions, such as rent, and not to a change of the duration or term ; the latter being expressed by the word "time."

If the legislature had intended a change of the term itself, nothing could be easier than to have so specified it by declaring in unmistakable language that the landlord might change the *term and the conditions of the lease,* or in other words of like import ; but in the absence of legal terms that will import such a construction of the language, we are not at liberty to give it other than that strict construction which the rule relating to the judicial interpretation of statutes requires

In this view of the case we may agree with the learned counsel for the defendant in error, that this statute is little other than declaratory of the common law ; but in the case of *Roberts* v. *Hayward,* 14 Eng. C. L. R. 648, cited in support of the point contended for, it is to be remarked that there was no pretense of attempting to change, by the notice given to the tenant, any thing more than the rent, which, as in the California case, was a mere condition sought to be annexed to the term. We can find no authority in the numerous text-books on the subject of tenancies, nor in any adjudicated case, for holding that under either the common law or the statutes of any State, the landlord may enlarge or otherwise change the term of an estate, by a

mere notice to a tenant. As we have shown in the first part of this opinion, if a tenant for a year or a month holds over the expiration of the term, the landlord may at his election treat him as a trespasser or as a tenant ; but if the latter, then the law implies the holding to be from year to year or from month to month, according to the duration of the expired term, upon the same terms as the previous tenancy. Or the landlord may impose new terms such as rent and the like, by giving notice, as in the case of *Roberts* v. *Hayward, supra;* but we cannot find that he may by such notice change the character of the estate ; and where the law steps in to imply a contract respecting the term, as in the case of a holding over, it seeks to do no more than to say that the new contract, which arises by implication from the acts of the parties, shall be as nearly as possible the same as the antecedent contract made by the parties themselves, and in no case is the term ever thereby enlarged. Undoubtedly by agreement of the parties, the terms of a lease may be changed during the continuance of the term, without a change of the term itself, and it would be an unwarranted stretch of the meaning of law language to say that where a statute provides for a change of the "terms of the lease," a change of the term is also implied.

When, under the general rule, a tenant for one or more years, by holding over may be treated by the landlord as a tenant for another year on the same terms as the prior lease (*Schuyler* v. *Smith*, 51 N. Y. 309), if the prior lease be for more than one year, the *term* created by the holding over is certainly not the same as the prior one, although the *terms, i. e.,* conditions, are.

We conclude, therefore, that these words "term" and "terms" cannot legitimately be used synonymously ; that they are not generic in their relations to each other, but have each a technical and specifically distinct meaning as applied to estates in the nature of tenancies. True, the words are both derived from the latin *terminus*, a limit or

boundary; but their application is nevertheless technically distinct; "term," meaning in brief a limited estate; and "terms," the limitations in the use of that estate arising out of the covenants and conditions thereto annexed.

For these reasons we must conclude that the notice given by the plaintiff below to the defendants was not within the statute, and hence, the instruction given to the jury, by the court, that: "If the jury believe, from the evidence, that the defendants, on the said 26th day of March, were tenants of the plaintiff of lot 28, block 20, East Denver, from month to month, holding the same at a monthly rental from month to month, and that they continued in possession and held said premises after the expiration of the month of April, the legal effect of such notice was to change the terms of the lease by creating a yearly in place of a monthly tenancy," was erroneous; and the judgment of the court below will be reversed accordingly.

*Reversed.*