No. 30,869.

Lee Gunnison, *Appellee*, v. Fred K. Evans and Cora M. Evans, *Appellants*.

(18 P. 2d 191.)

Opinion filed January 28, 1933.

*W. P. Waggener, J. M. Challiss, O. P. May* and *B. P. Waggener,* all of Atchison, for the appellants.

*T. A. Moxcey,* of Atchison, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one of ejectment and for rents and profits. The district court returned findings of fact and conclusions of law pursuant to which judgment was rendered for plaintiff. Defendants appeal. The findings of fact are accepted as correct, but soundness of the conclusions of law is challenged.

In 1926 Lee Gunnison, the plaintiff, was owner of two adjoining residences, described as No. 404 and No. 408 North Seventh street, in the city of Atchison. Plaintiff and his wife, Bertha Gunnison, occupied No. 404. Defendants, Fred K. Evans and Cora M. Evans, are husband and wife, and Bertha Gunnison was a sister of Mrs. Evans.

In February, 1926, plaintiff sold No. 408 to defendants for $4,000, $1,200 cash, and the remainder payable in installments of $50 per month. Defendants took possession and occupied the property as their home until after the death of Bertha Gunnison, which occurred

in March, 1928. After death of his wife plaintiff continued to reside in his own home, and when in Atchison boarded with defendants. There was no agreement respecting payment for board, but plaintiff did make some payments on account of his board. The 8th and 9th findings of fact follow:

"8th. The plaintiff, Gunnison, was residing alone in his home at 404 North Seventh street, which was fully furnished with household furniture and appliances, and of the approximate value of fifteen hundred ($1,500) dollars, and at times while he was in the home of the defendants, 408 North Seventh street, made the suggestion to defendants that they come over and live in his home at 404 North Seventh street, and that he would board with them and retain one room for his sleeping apartment, and that they, the defendants, would thereby be able to rent the property 408 North Seventh street which they were then buying on installments from the plaintiff, and that the rents which they would receive from their property would substantially meet the installment payments thereon as they matured.

"9th. About October 1, 1928, the defendant did move to the Gunnison home at 404 North Seventh street, and brought a part of their household goods with them. . . . The Evans home at 408 North Seventh street was immediately rented at thirty-five ($35) dollars per month, and has since and still is so rented, and the defendants receive the rent therefor."

Plaintiff had told defendants he had not been married previous to his marriage to Bertha Gunnison. He had in fact been married, had children by that marriage, and his former wife was living. Soon after defendants moved into the Gunnison home, plaintiff made a trip to Detroit to purchase an automobile. On the way home he stopped in Indiana, and made an investigation concerning his family. A few days after he returned home he received a letter from his daughter, Mrs. Payne, who lived in Coffeyville, Kan., and who had a son eight years old. Plaintiff went to Coffeyville, and on October 9 he brought his daughter to Atchison, took her to a hotel, and went home alone. Material portions of the 10th finding of fact read as follows:

"The defendant, Cora M. Evans, after receiving a telephone message from her daughter that Mr. Gunnison and some woman had appeared in town, was much disturbed, and believed that Mr. Gunnison had remarried. On the arrival of Mr. Gunnison at the home he assured the defendant, Cora M. Evans, that he had not remarried, and that the lady with him was not his wife, and advised her that the lady was his daughter. Mrs. Evans, being disturbed as indicated above, said to Mr. Gunnison that she wanted some assurance that she could stay in the house (the Gunnison home) for a while at least, and Mr. Gunnison thereon stepped into an adjoining room and wrote the following:

" 'I, Lee Gunnison, of sound mind, do promise and say that the family of Fred K. Evans may occupy and use just as they see fit the contents therein of my home at 404 North Seventh street, Atchison, Kansas, as long as they [wish] or until they get their home paid for, or longer if they wish. I reserve a room for my own use, and board or meals for which no charge will be asked, they to pay gas, light and water. No one shall set them out, or interfere with plans made by them. Lee Gunnison,
10-9-28. Atchison, Kansas.'

"Gunnison having so written, stepped into the room where the defendants, Mr. and Mrs. Evans, were, and handed the writing to Mrs. Evans, and said, 'Cora, I hope that this will ease your mind.' The defendants received the document prepared by the plaintiff, and filed the same in the office of the register of deeds in Atchison county, Kansas, on February 23, 1929, at 11 a. m. The next morning Mr. Gunnison left for Indiana with his daughter, where they located others of his children by former marriage. Mr. Gunnison was thereafter in Atchison on different occasions at his home and with defendants until July, 1929, but spent most of his time with his daughter in Coffeyville, or on trips with her. He brought her to Atchison, and to his home where the defendants lived, on a number of occasions. . . . At one time Mrs. Payne and her minor son stayed with Mr. Gunnison in Atchison at the home for one or two weeks, during which time Mr. Gunnison paid one-half of the grocery bill of the household."

The inevitable occurred, friction arose, and in September, 1929, plaintiff notified defendants to leave No. 404 within thirty days. Some payments on the purchase price of No. 408 being in default, plaintiff employed an attorney to collect them. The contract of purchase matured on April 7, 1930. On April 2, 1930, defendants mortgaged No. 408 for $1,800, satisfied the contract of purchase in full, and received a deed. At the time of trial defendants owed $1,400 of the sum borrowed to pay plaintiff for the property.

In April, 1930, plaintiff commenced the action to obtain possession of No. 404. In August, 1931, he remarried his former wife. The case was tried in December, 1931, and the findings of fact and conclusions of law were filed on January 9, 1932. The 13th finding of fact reads as follows:

"The defendants, from the time they moved into No. 404 North Seventh street up to the present time, have furnished the plaintiff with free board and meals, free lodging, free gas, light and water at all times that the same were desired, requested or accepted by the plaintiff, and the defendants stand ready, able and willing at the present time to accord the plaintiff all of the privileges reserved by him in said writing of October 9, 1928."

The court stated the following conclusion of law:

"The writing by the plaintiff of date October 9, 1928, was without consideration, is vague, and indefinite. The defendants, Fred K. Evans and

Cora M. Evans, were in no manner bound thereby, and the same is not mutual, and is void."

When, at invitation of plaintiff, defendants moved into No. 404, their occupancy had no fixed period of duration. When Mrs. Evans asked for an expression by plaintiff respecting duration of occupancy, plaintiff responded in writing. The writing contained an offer which was a promise that defendants might occupy and use the premises as long as they desired, on stated terms. The writing did not call for a return promise by defendants, such as: We promise to allow you to use your own room, promise to furnish you meals without charge, and promise to pay gas, light and water bills. What plaintiff's offer called for was forbearance respecting the room, and performance in the future of the series of specified acts. These were the conditions of plaintiff's promise, and performance of them was the price to be given by defendants in exchange for performance of plaintiff's promise. (Restatement of the Law, Contracts, § 24, and comment a.)

How could plaintiff's promise become binding? There were two requisites: acceptance, and consideration. Both of these requirements were satisfied by actual performance of the conditions embodied in plaintiff's offer. Restatement of the Law, Contracts, § 56, comment a, reads:

"In the formation of a unilateral contract where the offeror is the party making the promise, as is almost invariably the case, a compliance with the request in the offer fulfills the double function of a manifestation of acceptance and of giving consideration."

The result is, the facts found in finding No. 13 established both acceptance and consideration.

The district court held the contract was vague and indefinite and was not mutual. This conclusion rested on the fact that defendants did not promise to do the things upon which occupation of the premises depended or to stay for any fixed period. As indicated, a promise on their part to do and to forbear was not necessary to existence of a contract. A contract on the part of defendants to do and to forbear as long as they occupied the premises came into existence when they entered upon performance on their side. This satisfied the requirement of mutuality, and the only question remaining to be considered is duration of occupancy.

The writing delivered by plaintiff to defendants purported to create in defendants a possessory interest in the premises. They

were to occupy and use, and were not to be put out, as long as they wished to occupy and use. Was the writing effective for the manifested purpose?

The question just propounded is not new, and is answered by the common law. A grant by A to B to hold at the will of B does not create an estate at will enduring only so long as both parties will. Lord Coke said that when a lease is made to hold at the will of the lessee, the tenancy must also be at the will of the lessor. In Coke's day, livery of seizin was necessary to create an estate for life or other freehold. As shown in 1 Tiffany, Real Property, § 61c, Coke's dictum applied to creation of lesser estates. With livery of seizin obsolete, a lease to hold at the will of the lessee creates at least a life tenancy, terminable, however, at the option of the lessee.

"An estate to B to hold at the will of B alone is not an estate at will, but is an estate either for the life of the lessee, or in determinable fee simple." (Restatement of the Law, Property, § 20, comment a.)

The better authorities give effect to the expression of intention contained in the instrument creating the tenancy. (*Cole v. Lake Co.*, 54 N. H. 242; *Effinger v. Lewis*, 32 Pa. St. 367; *Gilmore v. Hamilton*, 83 Ind. 196; *Ely v. Randall*, 68 Minn. 177.)

Considering the situation and circumstances of the parties when plaintiff induced defendants to move into his home, and when he executed and delivered the instrument under which defendants claim, and considering the unambiguous terms of the instrument, there is no doubt about what plaintiff was doing for his deceased wife's sister and her husband. He guaranteed them occupancy of No. 404 until they got their own home paid for, and from a practical standpoint that has not yet been accomplished. But he did more. His manifested intention was that they should occupy as much longer as they wished; and so long as they make, or are willing to make, the returns which he specified as consideration for occupancy and use—"no one shall set them out."

Reading the instrument just as it is, it is clear that defendants were to hold so long as they desired, and not so long as some assignee, or grantee, or heir, or devisee might desire, and they may personally hold for life unless they choose sooner to vacate.

The judgment of the district court is reversed, and the cause is remanded with direction to render judgment for defendants.

THIELE, J., not participating.