[Civ. No. 13306.   First Dist., Div. One.   Apr. 11, 1947.]

IVAN NG, Respondent, v. W. F. WARREN et al., Appellants.

H. L. Richardson for Appellants.

Charles Reagh for Respondent.

WARD, J.—This is an appeal by defendants in an action for an injunction and declaratory relief. The complaint asked for such other and further relief as equity may require. Plaintiff was awarded damages in addition to a judgment enjoining and restraining defendants from further blocking a certain driveway, and requiring them to remove all obstructions thereto, including a stairway.

The complaint alleged in substance that plaintiff was the lessee of certain store premises known as 1660 Seventh Street, Oakland, California, under a lease dated February 24, 1944, for a term of five years, commencing on March 1, 1944. Among the appurtenances to the premises described in the lease were a shed on the rear of the lot on which the store building rests, and the use of a driveway, located on the lot adjoining the lot on which is located the store occupied by plaintiff. The complaint further alleged that at the time the lease was executed both lots belonged to plaintiff's lessor; that defendants subsequently acquired both lots from the said lessor by virtue of one deed; that the use of the shed was of great advantage to plaintiff; that the use of the driveway is essential to the profitable operation of his business, as it is the only means of access to the rear of the store for the delivery of the incoming meat and other merchandise; that the front doors of the store are narrow and in use during delivery hours by patrons of the store; that in the month of June, or thereabouts, the shed was partially destroyed by fire without plaintiff's fault; that the total damage to the shed did not amount to 30 per cent of the value of the premises, but the shed became utterly unusable

because of such fire; that the value of the leasehold premises is upwards of $6,500. The complaint also alleged the tender to defendants of checks and a draft in payment of rental, and that a certain check in the sum of $240 was received by defendants but evidently was not presented to the bank for payment.

The defendants' answer denied most of the material allegations of the complaint except the allegation that the shed was partially destroyed by fire. In this regard the answer alleged that the value of the shed amounted to 30 per cent and more of the value of the leasehold premises. The defendants also filed a cross-complaint by which they alleged that the lease had terminated in accordance with its provisions by virtue of the fact that more than 30 per cent of the leasehold value of the premises had been destroyed by the fire. The plaintiff in his answer to the cross-complaint admitted the allegation of the value of the shed only to the extent of 25 per cent of the value of his leasehold.

The premises were leased "together with appurtenances" for a term of five years, commencing on the first day of March 1944, and ending on the 28th day of February, 1949. Paragraph three of the lease provided: "In case the premises, or the building in which the same are situated, are totally destroyed by any cause whatever prior to the commencement of or during the term of this lease, then this lease shall thereupon immediately terminate and neither party hereto shall have any further rights or be under any further obligations on account of this lease, except Lessee for rent accrued; and if Lessee is not then in default in the performance of any of its obligations under this lease, Lessor shall refund to Lessee any unearned rents paid in advance by Lessee. For the purpose hereof, damage or injury to the extent of thirty per centum of the value of the premises shall constitute a total destruction thereof. In case the premises, or the building in which the same are situated, are partially destroyed by any cause whatever, Lessor with reasonable promptness and dispatch, shall repair and rebuild the same, providing the same can be repaired and rebuilt under State and Municipal laws and regulations within thirty working days, and Lessee shall pay rent during such period of repair or rebuilding in the proportion that the portion of the premises occupied by Lessee bears to the entire premises. For the purposes hereof, damage or injury which does not amount to thirty per centum of the

value of the premises shall be considered as a partial destruction.''

The trial judge viewed the premises at the request of the parties. What he observed is not part of the transcript of the record, but it is evidence which this court must assume supports the findings. (*Gates* v. *McKinnon,* 18 Cal.2d 179 [114 P.2d 576]; *Jones* v. *Bridges,* 38 Cal.App.2d 341 [101 P.2d 91]; *Cornell* v. *Hearst Sunical etc. Corp.,* 55 Cal.App.2d 708 [131 P.2d 404]; *Noble* v. *Kertz & Sons Feed etc. Co.,* 72 Cal.App.2d 153 [164 P.2d 257].)

The court's narration of the facts in the findings, not only as they pertain to the premises, but as regards the interests of the parties in the property, is correct and complete except as to the date when the shed burned. The findings provide ''1. On the 24th day of February, 1944, the plaintiff leased from ROSE ANESTIS the store premises at #1660—7th Street, in the city of Oakland, county of Alameda, state of California, the said ROSE ANESTIS being on said date the owner of said premises and having been the owner thereof for many years prior to said time.

''2. In the month of March, 1945, ROSE ANESTIS conveyed the premises in question by deed to the defendants and the defendants have ever since been and now are the owners of the said premises. The lease mentioned in finding No. 1 covered the store premises known as #1660—7th Street, Oakland, California, together with the appurtenances thereof, and among the appurtenances to the said store were a shed at the rear of said store which the various tenants of said store had for many years used to store empty crates and other property, and also the use of a driveway immediately to the west of said store, which driveway was located on property of said ROSE ANESTIS deeded to defendants and was owned by defendants and led to a side or rear entrance to said store, and which driveway had been used for upwards of twenty years to give access to the rear entrance to said store for the delivery of meat and groceries from wholesalers to the store premises and for removal of empty cartons, crates, garbage and such things from the store. The only other entry to the store is the front door thereof through which customers have to pass in order to enter and leave said store.

''3. In the month of March, 1945, the shed above mentioned was destroyed by fire so as to be useless, and the defendants have never reconstructed it nor has the plaintiff had

the use of equivalent space. The defendants, as cross-complainants, allege in their cross-complaint that the said shed was in value more than 30% of the leasehold premises. In his answer to the cross-complaint, the plaintiff, as cross-defendant, admits said allegation of value only to the extent of 25% of the leasehold value, and, there being no evidence of the value of said shed, the court finds the same was and is in value equivalent to 25% of the demised premises and no more.

"4. The court finds that the use of the shed and the driveway above mentioned was and is necessary to the full enjoyment of the use of the plaintiff's property held by him under said lease and was and is an appurtenance to the use of said property.

"5. On or about the 1st day of September, 1944, the fire marshal of the city of Oakland, county of Alameda, state of California required said ROSE ANESTIS, the then owner of said premises, the upper story of which was and is occupied as a multiple unit dwelling place, to construct a stairway from the upper part of said premises to the courtyard in the rear thereof, which said stairway as constructed slightly interfered with access by said driveway to and from the rear of the store and to and from the shed aforesaid. The plaintiff at that time made no objection to the construction of said stairway and the partial interference thereby with the use of said driveway.

"6. On or about the 1st day of July, 1945, the defendants began to construct a building completely across said driveway, making it impossible for the plaintiff to use the same. Plaintiff immediately remonstrated with the defendants concerning such conduct and when the defendants refused to clear the said driveway, the plaintiff brought this action against them with reasonable promptness. Notwithstanding the pendency of this action and their knowledge thereof, which the defendants acquired on the 14th day of September, 1945, by service of summons on them together with a copy of the complaint, the defendants continued the construction of said building and the blocking of said driveway.

"7. The plaintiff has paid to the defendants all rent that has accrued under the lease and is not in default in the performance of any term thereof, and the defendants have accepted the rents from the plaintiff up to the time of the trial of this action.

"8. At the time when the defendants purchased the property in question from ROSE ANESTIS, the plaintiff was in possession of the store-building and was using the driveway and the defendants knew of the plaintiff's lease."

Upon the above facts the court concluded as a matter of law "1. The plaintiff is not in default under the terms of his lease and any claim of the defendants that plaintiff is in default thereunder up to the time of the trial of this case is without foundation.

"2. The leasehold value of the premises in question has been decreased 25% by the failure of the defendants to reconstruct the said shed, and thereby the plaintiff has been damaged to the extent of twenty dollars ($20.00) per month from January 1, 1945, and is entitled to judgment against defendants for said sum, to-wit: three hundred dollars ($300.00). Unless and until such shed is reconstructed, damage at said rate will continue to accrue to plaintiff.

"3. Plaintiff is entitled to an injunction against the defendants, enjoining and restraining defendants from further blocking the driveway aforesaid and requiring them to remove all obstruction thereto, including said stairway.

"4. The defendants lost the right to claim the acquiescence of the plaintiff in and waiver of the partial interference with the use of the driveway by the construction of said stairway when they completely blocked the said passage way, and therefore should be required to remove the said stairway and locate it elsewhere so that the store in said building may have the uninterrupted use of the said driveway.

"5. The cross-complaint herein is without equity and the cross-complainants are entitled to no relief in the premises."

Judgment was ordered in accordance with the foregoing.

Defendants contend that plaintiff is not entitled to a refund of rent previously collected, and that he is not entitled to a mandatory injunction for the reason that no right had been conferred on him to use the driveway, or, if it had, such right had been relinquished.

With reference to the first contention, it is the view of the defendants that after the destruction of part of the premises by fire, no demand was ever made to repair the damaged portion, and that rent was paid without diminution or request therefor. They cite *Tatum* v. *Thompson*, 86 Cal. 203 [24 P. 1009], wherein a lease provided "that if, by reason

of fire, the premises herein leased shall become untenantable, no rent shall be charged or paid until they are made tenantable'' by the lessor. A fire occurred, burning the flooring of the premises immediately over the lessee's premises, but the lessee remained on and continued to pay the usual rent until his premises were damaged by rain. In affirming the judgment for the lessor the Supreme Court said (pp. 208-209): ''. . . this special provision of the lease did not bind the lessor to repair at all. Under the statute, he was bound to repair only upon notice from the tenant and if he then failed to do it, the limit of his liability was the right of the lessee to terminate the lease, or, at his option, to make the repairs to the extent of one month's rent, and deduct the cost thereof from the rent. (*Van Every* v. *Ogg,* 59 Cal. 563.) Neither did the covenant in the lease amount to a warranty of anything except that if the premises were untenantable the lessee should not be required to pay rent. In regular course of business, the collector called for the rent. If the plaintiffs deemed the premises untenantable, it was their duty to say so, and refuse to pay the rent. But, instead of that, they promptly paid, without objection or protest, thus in the most emphatic terms assenting to the proposition that they had not become unfit for the purpose for which they were rented. Neither did they take any measures to assert their rights under the statute, but they remained in possession, and gave no notice to repair, or of intention themselves to make repairs.'' Unlike the situation in the Tatum case, the lease herein provides that in the event of partial destruction the lessor is under a duty to repair.

The court found that there was a partial destruction of 25 per cent. In addition to providing that it is the duty of the lessor to repair with reasonable promptness, the lease provides that it is the duty of the lessee to pay rent during the period of repair in the proportion that the premises occupied by the lessee after the fire bears to the entire premises. ''A covenant to repair . . . and a covenant to pay rent . . . are usually considered as independent covenants, and unless the covenant to repair is expressly or impliedly made a condition precedent to the covenant to pay rent, the breach of the former does not justify the refusal on the part of the lessee to perform the latter.'' (*Arnold* v. *Krigbaum,* 169 Cal. 143, 145 [146 P. 423, Ann.Cas. 1916D 370]: 3 Williston on

Contracts, pp. 2519-2521, § 890; Restatement of the Law, Contracts, § 290.) Here the provision in the lease regarding the proportionate payment of rent cannot be considered as causing the covenant to repair to be a condition precedent to the payment of rent.

The lessee did not waive the breach by paying the rental in full "up to the time of the trial of this action." As said in *McAlester* v. *Landers,* 70 Cal. 79, 84 [11 P. 505] : "When damages have been sustained by a lessee by a breach of the lessor's covenant, if an action for rent is brought, the lessee may recoup his damages from the rent, or at his election he may bring a separate action for the recovery of the damages. (*Kelsey* v. *Ward,* 38 N.Y. 83.) And the fact that the lessee has paid the rent for the greater part of the term will not deprive him of the right to counterclaim his damages for the entire term. (*Cook* v. *Soule,* 56 N.Y. 420.)" "The measure of damages for breach of the landlord's covenant to repair is ordinarily stated to be the difference between the rental value of the premises with the repairs and without the repairs." (1 Tiffany, Landlord and Tenant, 589, § 87(9) ; see, also, 28 A.L.R. 1448, 1495; 5 Williston on Contracts, rev. ed., 3914, § 1404.)

■ Defendants contend that the driveway was not a necessary adjunct to the leasehold because its use was an inconsequential privilege which had been acquiesced in by defendants' predecessors in title. In *Mayer* v. *Hazzard,* 10 Cal. App.2d 1 [51 P.2d 189], quoting from *Harrison* v. *Ziegler,* 51 Cal.App. 429 [196 P. 914], the court said (p. 4) : "Rights and easements may and do pass to lessees by implication, 'but where the express words of the grant are not sufficient, the implication which supplies those words flows either from a *reasonable necessity,* or, considering all the circumstances, from the *manifest intention* of the parties.' " (See, also, 15 Cal.Jur. 624.)

There is no merit to defendants' argument that this driveway was not a necessary part of the leasehold but merely a convenient mode of access for delivery men. The lease designated a transfer of interest, "together with appurtenances." The driveway adjoined the leased premises at the date of the lease. In support of plaintiff's position is the fact that previously this portion of land had been used by a former lessor. Mrs. Anestis testified: "We used it 25 years in our business."

The following also appears in the transcript of testimony: "The Court: Well, what is there before the Court now? Mr. Reagh [attorney for plaintiff]: An objection to a question I asked Mrs. Anestis whether or not at the time she made the lease to Ivan Ng she showed him the driveway and told him that was for the delivery of meat and groceries in there. The Court: Objection overruled. Mr. Reagh: Is that right, Mrs. Anestis? A. Yes, I told him he could use the driveway, he could put his boxes back in the old baker shop, because there was ample——Q. That's the shed? A. Yes, and 4 or 5 trucks of the baker shop, they had their trucks there." Mr. Anestis testified that he had been married to Mrs. Anestis for nine years and that during part of that time "there were 3 bakery trucks, they were high, they had them in there" and that the driveway was "passable by trucks." Subsequently when trucks were prohibited from using the driveway it was necessary to use the front door of the market to deliver meats, etc., and to discharge crates, garbage, etc., through the same door.

Defendants strenuously insist that the width of the driveway and the height of the rear doors to the leased premises do not permit delivery through the rear entrance. The court gained his knowledge in this respect from an actual inspection of the premises. On these matters it is impossible for this court to rule that as a matter of law the trial court was incorrect in his findings. (*Gates* v. *McKinnon, supra; Noble* v. *Kertz & Sons Feed etc. Co., supra.*) There is no statement contained in the recent case of *Von Rohr* v. *Neely,* 76 Cal.App.2d 713 [173 P.2d 828] inconsistent with the holding herein.

The defendants also argue that the plaintiff relinquished the use of the driveway when, under the direction of representatives of the fire marshal of the city of Oakland, a stairway to be used as an exit for tenants of the second floor in case of fire was erected at the rear of one of the buildings.

Under all of the circumstances of this case it appears that the trial court reached a reasonable conclusion, namely, that the acquiescence to a slight interference with his right to use the driveway should not bar the lessee from objecting to its complete obstruction by the erection of a building thereon. "A consent to a partial obstruction of an easement of light and air will not extinguish the remainder thereof." (142 A.L.R. 484; 28 C.J.S. 717, § 53.)

■ The trial court ordered the present owner to remove. the stairway as well as the structure over the driveway. This portion of the decree is based on the conclusion that although the plaintiff, by his acquiescence, may have lost his right to object to this "slight" interference, defendants by their later actions lost the right to claim this right. An examination of the pleadings discloses that the removal of the stairway was not made directly an issue in the case. According to the findings, the stairway was constructed in September, 1944, without objection by the plaintiff. Defendants did not become the owners of the premises until March, 1945. Thus the findings indicate that when defendants purchased the property the stairway was constructed, and so far as the defendants were concerned, the only easement existing was the driveway subject to the stairway. Under these circumstances it would be most inequitable to deprive the defendants of their rights existing at the time they purchased the property because of their later inequitable actions.

The last point mentioned by defendants is in reference to a lease with the United States government, with the right to use the appurtenant driveway herein. This was a joint use of the right of way or appurtenance with plaintiff, and the point is therefore without merit.

Defendants raised additional points on the trial, such as whether the testimony of the witnesses was introduced to vary the terms and conditions of a written instrument. As the alleged errors are not made a part of this appeal, they do not require consideration. (*Title G. & T. Co.* v. *Fraternal Finance Co.*, 220 Cal. 362 [30 P.2d 515], and cases cited therein.)

The conclusions and judgment are modified by striking therefrom all reference to the removal of the stairway. As modified, the judgment is affirmed; plaintiff to recover costs.

Peters, P. J., and Bray, J., concurred.