523 P.2d 999 (1974)
Margarethe COLLINS, Plaintiff-Appellee,
v.
William M. SHANAHAN, and Ellen C. Shanahan, Defendants-Appellants.
No. 73-127.
Colorado Court of Appeals, Div. I.
May 7, 1974.
Rehearing Denied May 29, 1974.
Certiorari Granted July 15, 1974.
*1001 Hindry & Meyer, Gail F. Linn, Denver, for plaintiff-appellee.
Clark, Martin & Pringle, Bruce Pringle, Denver, for defendants-appellants.
Selected for Official Publication.
SMITH, Judge.
This action was originally commenced as one in unlawful detainer by plaintiff-appellee to recover possession of a penthouse apartment leased by plaintiff to defendants-appellants. Following trial to the court, judgment was entered in favor of plaintiff for possession of the apartment, rentals due in the amount of $1,833, and attorney's fees in the sum of $750. We affirm in part and reverse in part.
Defendants, the original owners of the apartment building containing the penthouse in dispute, sold the apartment building to plaintiff in August of 1968, and at that time entered into a lease agreement for the penthouse where they resided. On October 15, 1971, plaintiff, claiming that the tenancy was month to month, gave notice to defendants that the lease would be terminated as of November 1, 1971.
Under the rental agreement, plaintiff was to paint the premises in question every three years. In November of 1971, defendants demanded that plaintiff paint the penthouse. Upon plaintiff's refusal to paint, defendants took bids, had the penthouse repainted at a cost of $1,808, and withheld the rent for January, February, March, and part of April to cover the cost of painting.
On February 4, 1972, plaintiff commenced this action, seeking possession of the penthouse on the grounds that plaintiff had terminated the month to month tenancy which had been created by the lease agreement. At trial, defendants testified that they had agreed to sell the building only on condition that they be permitted to lease the penthouse in which they resided for as long as they desired. Neither the contract for sale nor the lease made reference to this condition of the sale, and plaintiff testified that no such condition had been agreed upon.
Plaintiff brought this action as an unlawful detainer action and received the benefits of summary proceedings under 1965 Perm.Supp., C.R.S.1963, 58-1-11 pursuant to his notice to quit. This was on the theory that the tenancy was one "at will." However at trial, plaintiff's counsel, in asserting an alternate right to termination based upon nonpayment of rent, stated: "This matter comes before [the court], not on a typical F.E.D. matter, but rather a normal complaint and answer." Plaintiff had at no time served upon defendants a demand for payment or possession pursuant to C.R.S.1963, 58-1-4(4).
The case was tried, without objection by defendants, upon two separate theories: First, as a statutory F.E.D. action on the premise that the tenancy was one at will; and secondly, as a general civil action for breach of a lease covenant to pay rent, a right granted in the contract. The trial court found that the lease was a month to month tenancy and that plaintiff therefore had the right to terminate upon proper notice. The trial court also found that defendants' withholding of rent breached the covenant to pay rent, thereby permitting termination by plaintiff. Defendant did not ask for reimbursement of any costs of painting or repairs in the event termination was held proper. Because the remedies differ, particularly as to the award of attorney's fees, we must review the rulings of the court on each theory.

TERM OF POSSESSION
The lease provisions were contained in a printed form of lease agreement. The clause defining the term of possession and rent payable was modified by the parties and provided as follows:
"To have and to hold ... unto the said tenant from twelve o'clock noon of the 1st day of August, A.D., 1968, until [twelve o'clock noon of the ___ day of ___, A.D. 19 ___], at and for a *1002 rental, [for the full term of aforesaid, of ___ dollars],[1] payable IN ADVANCE in monthly installments of Five Hundred and No/100 dollars per month UNTIL LEASE IS TERMINATED BY TENANT. SAID NOTICE OF CANCELLATION SHALL BE GIVEN BY TENANT TO LANDLORD IN WRITING AT LEAST SIXTY (60) DAYS PRIOR TO SAID TERMINATION DATE."[2]
Defendants urge that the lease creates in them a life estate, and that plaintiff had no power to terminate the lease absent a breach of covenant by defendants. We agree.
The construction of unambiguous written instruments is an issue of law, and this court is therefore not bound by the lower court's conclusions. See Helmericks v. Hotter, 30 Colo.App. 242, 492 P.2d 85. A lease, like any other contract, is to be construed according to the general rules of construction of written instruments. See Buckhorn Plaster Co. v. Consolidated Plaster Co., 47 Colo. 516, 108 P. 27. We are here guided by the rule of construction which states that the intention of the parties, as reflected in the language of the agreement, is controlling. See Charles Ilfeld Co. v. Taylor, 156 Colo. 204, 397 P.2d 748.
It is clear from a reading of the lease agreement that it was the parties' intention that the lease continue in effect as long as defendants desired. The lease expressly provides that the term of the lease shall continue until terminated by the tenant. The conclusion that the parties intended the lease to continue until terminated by defendants is strengthened by the fact that the portion of the contract providing for termination of the lease on a date certain was deleted. Finally, the lease described the tenants as William and Ellen Shanahan or the survivor. The question posed is what kind of a relationship was created by this agreement.
Plaintiff, relying on Hurd v. Whitsett, 4 Colo. 77, contends that where, as here, the lease is for an indefinite term and the rental is payable in monthly installments, the lease creates a month to month tenancy terminable by either party upon proper notice. In Hurd, the court considered an oral lease, the terms of which were proven by parol evidence. The evidence disclosed that no provision for termination had been agreed upon by the parties. In holding that a month to month tenancy was created, the court observed that in the absence of express agreement as to the length of the lease, the period of payments of rent may be one of the principal criteria in determining the nature of the tenancy although it is not the sole determinant, Thompson v. Baxter, 107 Minn. 122, 119 N.W. 797; see Hurd v. Whitsett, supra.
In the present case, provision is made for termination of the lease, i. e., the lease is to continue until terminated by lessees. Under these circumstances, the term is not "indefinite" within the context of the Hurd decision. See Thompson v. Baxter, supra; cf. Mahoney v. Lester, 118 Mont. 551, 168 P.2d 339.
Nor do we believe the lease creates a tenancy at will. The chief characteristics of a tenancy at will are 1) indeterminate duration of the term, and 2) the right of either party to terminate the lease at will. In re Wilson's Estate, 349 Pa. 646, 37 A.2d 709. The first factor has been discussed previously. As to the second requirement, the lease here at issue, by its express terms, gives the right to terminate at will solely to the lessee. This factor alone would exclude a tenancy at will.
We recognize that some courts have implied a corollary right to terminate at will in the lessor. See Tampa Drug Co. v. West Drug Stores, 112 Fla. 331, 150 So. 786; Shorter v. Shelton, 183 Va. 819, 33 S.E.2d 643. However, we reject the proposition that a lease to hold at the will of the lessee must also be at the will of the *1003 lessor. Instead, we agree with the following criticism of such proposition:
"Taken literally, it would seem to state that all leases for life or in fee become leases at will if the lessee has a power to terminate the lease at any time, and this literal interpretation has been used in some cases. Still, it is clear that one can create a life estate or a fee on limitation or subject to a condition, and it would seem immaterial that the event on which the estate is conditioned or limited is within the control of the owner of the estate. So a lease for a term is valid and does not result in a tenancy at will, although the lessee is given an option to terminate." 1 American Law of Property § 3.30 (A. J. Casner ed. 1952)
This analysis has gained judicial recognition. See Lindlay v. Raydure, D.C., 239 F. 928, aff'd, 6 Cir., 249 F. 675, cert. denied, 247 U.S. 513, 38 S.Ct. 580, 62 L.Ed. 1243; Gunnison v. Evans, 136 Kan. 791, 18 P.2d 191.
We are persuaded, and the better reasoned authorities have so held, that a lease authorizing termination at will solely in the lessee creates a life estate. See Lindlay v. Raydure, supra; Gunnison v. Evans, supra; Thompson v. Baxter, supra; Putnam v. Davis, 103 N.H. 121, 166 A.2d 469; I American Law of Property § 3.30 (A. J. Casner ed. 1952); Restatement of Property § 21, Comment a; C. Smith & R. Boyer, Survey of the Law of Property 43 (2d ed.); 4 G. Thompson, Real Property § 1894. The lease involved here embodies all the necessary requirements of a life estate, and such a characterization most nearly comports with the parties' intention.
The primary characteristic of a life estate in land is that the interest is limited by the life of some person. See In re Smythe's Estate, 132 Cal.App.2d 343, 282 P.2d 141; Long v. Horton, 126 Ind.App. 651, 133 N.E.2d 568. It has been said that a life estate exists if the interest can or may continue during a life. See 4 G. Thompson, Real Property § 1893. By the express terms of the contract here at issue defendants' interest may continue for the survivor's life. Although the agreement does not by its terms specifically grant an interest "for life," it has been held that a life estate may be created by a general grant without defining any specific interest. Steeve v. Yaeger, 145 Cal.App.2d 455, 302 P.2d 704; Pointer v. Lucas, 131 Ind. App. 10, 169 N.E.2d 196; Thompson v. Baxter, supra. Plaintiff therefore had no right to terminate the possessory interest absent defendants' breach of covenant.

BREACH OF COVENANT
Defendants also urge that the trial court erred in concluding that defendants' withholding of rent to cover the cost of painting the premises constituted a breach of their covenant to pay rent entitling plaintiff to declare a forfeiture and recover possession of the penthouse pursuant to the agreement. We find no error in this conclusion.
The issue posed turns on whether defendants' covenant to pay rent is dependent upon plaintiff's covenant to paint. Although the principle has been subject to criticism, see Schoshinski, Remedies of the Indigent Tenant: Proposals for a Change, 54 Geo.L.J. 519 (1966), the great majority of courts have held that covenants relative to possessory interests are presumed independent absent a clear intention to the contrary. See, e. g., Ng v. Warren, 79 Cal. App.2d 54, 179 P.2d 41.
Following that principle here, we find no such contrary intention manifested in the document creating the estate. Because plaintiff's covenant to paint the penthouse is therefore independent of defendants' covenant to pay rent, the breach of the former does not justify the refusal to perform the latter, and plaintiff therefore was properly granted possession following defendants' breach of covenant. See Ng v. Warren, supra; 6 S. Willston, Contracts § 890 (Jaeger 3d ed.); Restatement of Contracts § 290.
Even if the covenants were dependent, the redecoration done by defendants, *1004 as the trial court found, was substantially in excess of the plaintiff's duty to repaint. Under these circumstances, the withholding of rent allegedly to offset the redecoration constitutes a material breach of contract permitting repossession by plaintiff. See Union Oil Co. v. Lindauer, 131 Colo. 138, 280 P.2d 444.

ATTORNEY'S FEES
Finally, defendant contends that the trial court erred in granting plaintiff attorney's fees. We agree.
It is well established in Colorado that attorney's fees do not fall within the category of expenses usually taxed as costs, see Leadville Water Co. v. Parkville Water District, 164 Colo. 362, 436 P.2d 659, and such fees will not be granted in absence of statutory or contract provisions. Publix Cab Co. v. Colorado National Bank, 139 Colo. 205, 338 P.2d 702.
Although the unlawful detainer statute expressly provides for the awarding of attorney's fees as damages, C.R.S.1963, 58-1-25, this is true only if plaintiff recovers possession pursuant to the provisions of the statute. In the instant case, plaintiff's recovery of possession, as we have said, was premised on breach of covenant, pursuant to plaintiff's election to proceed on a general contract basis outside the statute.
Plaintiff also urges that the contract provided attorney's fees as damages for breach of covenant. She relies upon a lease provision which permits application of the lessee's security deposit to attorney's fees upon breach of the lease. This provision relates to the landlord's rights regarding the withholding of a security deposit, and we do not read it as providing a contract right to recover attorney's fees upon breach of covenant. It does not provide expressly for attorney's fees as damages for breach of covenant, and does not entitle plaintiff to such damages where, as here, no security deposit was required. Thus, because there is neither a statutory nor a contract right to recover attorney's fees, it was error for the trial court to award such fees.
The judgment is affirmed with regard to the granting of possession and rents due to plaintiff, and reversed insofar as plaintiff was awarded attorney's fees.
SILVERSTEIN, C. J., and COYTE, J., concur.
NOTES
[1] Bracketed portions deleted by parties.
[2] Capitalized portions added by parties.