No. 35,018

MARY QUILTY, Executrix of the Estate of John Quilty, Deceased, *Appellee*, v. THE NEW YORK LIFE INSURANCE COMPANY, *Appellant*.

(109 P. 2d 215)

Opinion filed January 25, 1941.

*J. S. Simmons, Alva L. Fenn* and *Ted H. Hurtt,* all of Hutchinson, for the appellant.

*W. H. von der Heiden, C. A. Morgan,* both of Newton, and *Douglas Stripp,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action on a life insurance policy. Judgment was for the plaintiff. Defendant appeals.

The petition stated two causes of action, but since a demurrer of defendant was sustained to the second, and no appeal was taken from the ruling, no attention need be paid to it here. In the first cause of action after the formal allegations the petition alleged that a policy of life insurance was issued to Quilty for $5,000 on February 17, 1925; that the policy provided that any unpaid premiums required to complete payment for the current insurance year in which death occurred should be deducted from the amount payable under the policy; that Quilty performed all the terms of the policy during his lifetime, and plaintiff, his wife, was beneficiary; that on May 17, 1937, Quilty borrowed $1,365 upon the security of the policy, and a copy of the loan agreement was attached to the petition; that plaintiff had furnished proof of death of Quilty, which occurred

on July 27, 1938, but defendant denied liability; that there was due to plaintiff on the policy $5,000 with interest less any sum that might be deductible under the terms of the loan agreement, amounting to about $1,691.31, leaving the sum of $3,308.69 owing plaintiff. Judgment was asked in that amount.

The policy loan agreement, a copy of which was attached to the petition, showed that it was signed by Quilty and plaintiff before a notary on May 17, 1937, and just above the signatures was stamped the phrase "Loan calculated as of 2-17-37." The testimony at the trial was that these words were not stamped thereon when the loan agreement was signed.

The first amended answer admitted the issuance of the policy and that a loan on the policy was made on May 17, 1937, and that Quilty died on July 27, 1938, and denied every other allegation of the petition. The answer then alleged a premium became due on the policy on February 16, 1938; that on January 17 defendant mailed a notice that the premium was due, to the last known address of Quilty; that Quilty failed to pay the premium and the policy lapsed on February 17, 1938; that on March 21, 1938, defendant mailed a notice to Quilty that this premium had not been paid, together with the interest due on the policy loan, and notifying Quilty that it was the intention of the company to cancel the policy except as to the right of surrender value or paid up or continued insurance and that the policyholder would have the right to pay the premium at any time within thirty days after the notice was mailed; that Quilty failed to pay the premium or interest, and on April 9, 1938, the defendant sent another notice to Quilty informing him that the grace period allowed under the policy would expire thirty-one days after February 17, 1938; that about May 1, 1937, Quilty applied to defendant for a loan on the policy; that this application was allowed and Quilty and defendant executed the loan agreement, bearing date of May 17, 1937, to which reference has already been made; that on February 17, 1938, when the policy lapsed its cash value was $1,450; that it had a current dividend of $26.10, making a total value of $1,476.10, and on the same date there was interest due on the loan of $81.90, making a total indebtedness of $1,446.90, which subtracted from the total value of the policy left $29.20, which would carry the policy for 125 days from the date of the lapse, or to June 22, 1938. It will be noted that Quilty died on July 27, 1938, so if the

calculation just stated was correct then the policy was not in effect when he died.

The answer further alleged that Quilty failed to pay any interest or premium, and on June 23, 1938, defendant mailed him a notice giving the due date of the premium and the amount of the policy loan, with interest; that the policy having lapsed for nonpayment on that date, the loan having been satisfied from the cash value of the policy and the excess had been used to purchase insurance for $3,554, which expired on June 22, 1938, the policy had no further insurance value. The answer then contained some allegations with reference to an application for reinstatement, with which we are not concerned.

To this answer the plaintiff interposed a demurrer. Contrary to the usual practice this demurrer set out the reasons why it should be sustained. It pointed out a provision in the policy, as follows:

"Any unpaid premiums required to complete payment for the current insurance year in which death occurs shall be deducted from the amount payable hereunder."

The demurrer also alleged, first, that this provision made the liability of the defendant absolute where death occurred within one year after any premium became due or remained unpaid; that the payment of the premium of February 17, 1938, was not a condition precedent to recovery upon the policy for the reason the death of John Quilty occurred on July 27, 1938, which was within the current insurance year commencing February 17, 1938, and such premium of February 17, 1938, was only deductible from the amount payable under the policy.

The demurrer set out as a second argument that the answer admitted that on February 17, 1938, the cash value of the policy, including the dividend, was $1,476.10, and that the answer claimed that the interest charge on the loan was $81.90, making a total indebtedness of $1,446.90, which left a balance of enough to carry the insurance to June 21, 1938. The demurrer pointed out, however, that the loan agreement was dated May 17, 1937, and bore interest at 6 percent from that date to the anniversary of the policy, or February 17, 1938, and a simple computation of the interest due on February 17, 1938, under the terms of the loan agreement disclosed that the interest actually due was $61.43 rather than $81.90, which increased the value in the policy available for paid-up insurance to

$49.67. The demurrer pointed out that this would keep the policy in effect until September 16, 1938, and hence it was in effect when Quilty died on July 27, 1938. The demurrer pointed out that defendant relied on the following summary:

"Cash value of policy.................................. $1,450.00
Current dividend...................................... 26.10
    Total value ....................................... ——————— $1,476.10
Policy loan, dated May 17, 1937........................ $1,365.00
Interest on said policy loan, charged from February 17,
    1937, to February 17, 1938, a full year's interest...... 81.90
        Claimed total indebtedness...................... ——————— 1,446.90
Leaves amount available for purchase of extended
    insurance ......................................... $29.20

"Defendant claims such balance of $29.20 would carry temporary or extended insurance in the sum of $3,554.00 for 125 days after February 17, 1938, to June 22, 1938."

The demurrer pointed out that plaintiff relied on the following summary:

"Cash value of policy, February 17, 1938................ $1,450.00
Current dividend...................................... 26.10
    Total value........................................ ——————— $1,476.10
Policy loan, dated May 17, 1937........................ $1,365.00
Interest computed as provided in the policy loan agree-
    ment, to-wit, from its date May 17, 1937, unto
    February 17, 1938, at 6 percent..................... 61.43
        Total indebtedness............................. ——————— 1,426.43
Leaves amount available for purchase of extended
    insurance ......................................... $49.67"

Plaintiff submitted that the balance of $49.67 would purchase temporary or continued insurance in the sum of $3,574 for a period of 211 days after February, 1938, until September 16, 1938, and death occurred on July 27, 1938.

Plaintiff prayed that her demurrer to the answer of defendant be sustained and that she have judgment for $3,574 with interest.

It will be seen that the law questions raised by this demurrer turned upon what effect, if any, was to be given the words "Calculated as of 2/17/37" which were stamped on the loan agreement. If it should be held that the interest should be calculated from February 17, 1937, then the defendant was right and the answer stated a defense; if, on the other hand, the interest should be calculated from May 17, 1937, the date the instrument was executed, and the date from which the instrument itself provided the interest should

be paid, then the plaintiff was correct and the answer did not state a defense and the demurrer should have been sustained. The trial court adopted the latter view and sustained the demurrer. The defendant was given 15 days to amend its answer.

By way of amendment to its answer, the defendant pleaded that on the 11th day of March, 1936, Quilty secured a loan on his policy of $1,252; that the agreement for this loan was the same as the one for the later loan, to which reference has already been made in this opinion; that Quilty failed to make the payments, and on May 24, 1937, when the second loan was executed, the statement of indebtedness was as follows:

| | |
|---|---:|
| "Loan 3-11-36 | $1,252.00 |
| Interest on $1,252 from 3-11-36 to anniversary date 2-17-37 | 70.59 |
| Interest on $1,252 from 2-17-37 to 5-24-37 | 19.78 |
| Interest on $70.59 from 2-17-37 to 5-24-37 | 1.05 |
| Premium due 2-17-37 | 226.85 |
| Interest on part of premium not paid by dividend, $168.22, 2-17-37 to 5-24-37, at 5% | 2.00 |
| Total | $1,572.27" |

The answer further stated:

"There was a dividend accrued on said policy for the years terminated on the 17th day of February, 1936, and the 17th day of February, 1937, of $58.17, and in order to have balanced the account fully at that time it would have been necessary for the insured, in addition to giving the note of $1,365 and counting the dividend, to have remitted the sum of $149.10, making a total as follows:

| | |
|---|---:|
| Note | $1,365.00 |
| Accrued dividend | 58.17 |
| Cash neceessary to balance | 149.10 |
| Total | $1,572.27" |

It was further alleged that it was the universal custom of the company to make settlement as of the anniversary days, as was specified in the loan contract, and therefore they requested the insured to, and he did, send a check for $127.87, leaving due a balance on the first loan above of $21.35, and endorsed the contract "Loan calculated as of 2-17-37." The answer further stated that on the 17th day of February, 1938, the anniversary of the policy, a premium became due and was not paid, at which time the policy lapsed by reason of the nonpayment of said premium and on that date there was due from the insured the following:

"Balance due on former settlement, May 17, 1937.................  $21.23
Loan made at that date........................................ 1,365.00
Interest on loan..............................................   61.43

    A total of................................................ $1,447.66"

The answer further stated that the value of the policy at that date was $1,450 and a dividend at the anniversary of the policy, February 2, 1938, of $26.10, making a total of $1,476.10, and leaving a balance to the credit of the insured to apply to extended insurance of $28.44, which sum was duly applied and actually was sufficient to extend the policy 121 days to June 19, 1938, but the policy was actually extended until the 22d day of June, 1938. And on the 23d of June, 1938, the defendant notified the insured that the extended insurance had expired and the policy had no value for any purpose.

It will be noted by this amended answer that the defendant shifted its ground somewhat and claimed that there was really $21.33 due it from the first loan, that was not referred to in any way in the loan agreement when the second loan was made. It should be noted, however, that the question still turned upon the effect to be given the words "Calculated as of 2/17/37" which were stamped on the loan agreement.

The amendment simply attempted to bring to bear on the question a transaction that had occurred between the parties prior to the making of the loan which was in effect at the time of the death of the insured. What effect this should have we shall see presently.

In her reply the plaintiff alleged first, a general denial. The reply then denied that on February 17, 1938, the amount available for extended insurance was either $29.20 or $28.44, but alleged that the amount actually available was $49.67, which kept the policy in force until the death of Quilty. The reply further denied that on February 17, 1938, there was any balance due defendant on a former settlement, but on the contrary all accounts were agreed upon between the parties at the time the second loan agreement was executed and on February 17, 1938, the only indebtedness against the policy was as follows:

"Policy loan dated May 17, 1937.................................$1,365.00
Interest on said loan from May 17, 1937, to February 17, 1938,
    at 6% ......................................................   61.43

    Total indebtedness .........................................$1,426.43"

The defendant filed a motion to require the plaintiff to make this reply definite and certain. This motion was denied by the trial court.

When the case came on for trial counsel for the plaintiff made his opening statement. At the conclusion of this statement defendant asked for judgment. This motion was overruled, and since the defendant makes a vigorous argument here that this ruling was error the statement will be noted. The statement was to the effect that on May 17, 1937, Quilty secured a loan of $1,365 on the policy; that this loan was to bear interest at 6 percent; that he took up an earlier loan with this loan and the payment of some cash; that he had his policy in force by the loan from May 17, 1937, to February 17, 1938; that in February, 1938, he was unable to pay the interest and premium and he had a cash value in the policy of $1,450 plus a dividend of $26.10, which made a total value of $1,476.10; that against this there was the indebtedness of $1,365 plus interest at 6 percent for nine months amounting to $61.43 or a total of $1,426.43; that there was left available for paid-up insurance the sum of $49.57. The issue was stated: Did he owe nine months' interest from the time the note was made or did he owe a full year's interest from the previous anniversary to the next year? Counsel then stated that while the loan agreement showed that it was signed on May 17, 1937, the words "Loan calculated as of 2/17/37" had been stamped on it after it had been signed and returned to the company; that in its amended answer defendant admitted that the interest due on February 17, 1938, was $61.43, but that Quilty owed it $21 interest on a former loan and that the old note bore on its face, put there by defendant, the words "canceled by deduction from new loan." Counsel then stated the issue was whether he did owe something on the old note or not, and if that note was paid, as it appeared to be from the face of the note, then clearly Mrs. Quilty was entitled to recover because Mr. Quilty did not owe that extra $21, and that extra $21 that they claimed they deducted was what made the difference in this case, whether it expired in June before he died, or sometime in September after he died. The jury found generally for the plaintiff and answered special questions. Since no argument is made in this court as to the effect of these questions they will not be noted here.

Defendant's motion for a new trial was overruled and judgment ordered for plaintiff.

The first point argued by defendant is that the trial court erred in overruling its motion to require the plaintiff to make her reply definite and certain. We have examined the pleadings and this reply. It appears that the allegations were a repetition of what

had been said in the petition and in the demurrer to the answer. We can see no statement in this reply which required clarification in order for defendant to be advised as to what it would have to meet in the way of proof. It seems clear that from the outset the plaintiff made the claim that Quilty should only be charged with interest from May 17, 1937, to February 17, 1938, and that he owed nothing except as shown on the loan agreement of May 17, 1937. Defendant was advised of this claim by the pleadings as they were filed.

Defendant next argues that the court erred in not sustaining its motion for judgment on the opening statement of plaintiff and in overruling its demurrer to the evidence of plaintiff. The defendant also filed a motion for an instructed verdict at the conclusion of all the evidence and urges that the overruling of that motion was error.

We have found it feasible to consider all three of these questions together. The argument is that the two loans represented the same debt and that plaintiff assumed the burden of showing that the loan made on May 17, 1937, paid off all the indebtedness that existed prior to that time, and since neither the opening statement nor the proof of plaintiff showed that fact there was a fatal omission in the proof and the motions should have been sustained. The answer to that argument is that the record discloses in the first place that interest on the last loan should have been calculated from May 17, 1937 only, rather than from February 17, 1937.

As to the claim of defendant that the sum of $21 due on the old loan should have been deducted from the new loan, the loan agreement itself disputes that. In the first place, there is the stamped notation to which reference has been made. Had that statement been on the loan agreement when Quilty signed it we would have a different question. No one argues now but that it was put on after the agreement was signed and returned to the company. The fact that the company put it on there though is a persuasive circumstance to prove that it was not leaving any amount due on the old loan but was deducting it from the new loan.

In the second place, we shall examine the application for the loan upon which the loan agreement was based. That statement contains the statement that Quilty applied for the loan of $1,365 and that any existing indebtedness should be deducted from this loan. The only fair interpretation to be given this language is that the policy would not be reinstated unless the loan of $1,365 was enough to

satisfy all existing indebtedness. The defendant did reinstate the policy—hence, it cannot be heard to say now that this loan was not enough to pay all existing indebtedness.

We shall next examine the application for reinstatement that was signed by Quilty. The entire transaction depended upon this paper being satisfactory to defendant. It contained a statement that the company had received all the sums the policy required to be paid. Then and not until then should the policy be reinstated. Just as clearly as the English language permits did the defendant in the preparation of these last two instruments provide that all indebtedness to the company should be stated in the loan agreement for $1,365 that was signed on May 17, 1937. That instrument was a promise to pay $1,365 to the company on the next anniversary of the policy with interest at the rate of 6 percent per annum from this date to said anniversary. The words "this date" as used in that agreement certainly meant the date the agreement was signed before the notary on May 17, 1937.

We find then that the case is one for the application of the rule that where an offer may be accepted by an act it becomes a contract upon the performance of the act. In *Gunnison v. Evans*, 136 Kan. 791, 18 P. 2d 191, appears the following:

"'In the formation of a unilateral contract where the offeror is the party making the promise, as is almost invariably the case, a compliance with the request in the offer fulfills the double function of a manifestation of acceptance and of giving consideration.' Restatement contracts, § 56, comment a." (p. 794.)

Quilty made the offer of what he would do in order to get his policy reinstated. The company did reinstate it and did so upon the terms of the various instruments it required Quilty to sign.

The next argument of defendant is that the trial court erred in sustaining the objections of plaintiff to certain evidence offered by defendant. These offers had to do with the practice of defendant in its New York office in handling applications for reinstatement and for loans. There was no evidence offered to the effect that Quilty knew anything about these practices. Under such circumstances he was not bound by the customs and practices of the defendant which it sought to prove. (See *Peoples Ice & Fuel Co. v. Dickey Oil Co.*, 145 Kan. 351, 65 P. 2d 319.) Furthermore, the decision in this case turns upon the effect to be given to a practice or custom which would overturn the positive and unambiguous provisions of a contract. Practice and customs cannot be allowed to

bring about such results. (See *Chicago Cold Storage Warehouse Co. v. Murphy,* 134 Kan. 41, 4 P. 2d 416.)

Defendant next argues that its motion for a new trial should have been sustained because the verdict was contrary to the evidence. As a matter of fact, there was not a great deal of dispute about the ultimate facts. The case turned largely on records of the company upon which plaintiff had a right to rely. The verdict was supported by the evidence.

The judgment of the trial court is affirmed.