Herman *v.* Stern, Appellant.

Argued November 19, 1963. Before JONES, COHEN, O'BRIEN and ROBERTS, JJ. March 17, 1964, judgment reversed, ROBERTS, J., dissenting. Reargument granted May 27, 1964.

Reargued November 23, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

274

*Jerome L. Markovitz*, with him *Milton Brooks*, for appellant.

*C. Laurence Cushmore, Jr.*, with him *White & Williams*, for appellee.

*Warren G. Morgan*, and *Morgan & Roth*, for amicus curiae.

*Milton P. King, Philip Sterling*, and *Mancill, Sterling, Magaziner & Semans*, for amicus curiae.

*Emanuel Romm*, and *Barnie F. Winkelman*, for amicus curiae.

OPINION BY MR. JUSTICE O'BRIEN, October 13, 1965:
The instant appeal arises from a suit by a real estate broker for a commission which he alleges was earned through the sale of property owned by James L. Stern, the appellant herein. Stern and his wife owned the land and building located at 1707 Walnut Street in Philadelphia. In May of 1954, Stern rented his building to John J. Shaw, Jr. Late in 1959, Shaw sought to be relieved of his lease. The Shaw lease did not expire until August 31, 1960. In order to find a

subtenant, Shaw engaged Herman, the appellee. Soon thereafter, a subtenant was obtained by Herman for the unexpired term of the Shaw lease. The subtenant also signed a new lease for the rental of the premises for an additional three year period. Herman prepared the sublease from Shaw to the new tenant and the new lease from Stern to the new tenant.

Both of these leases contain in paragraph 37 (B), the following clause: "In consideration of the services of Richard B. Herman & Company, Inc., in securing the execution of the above lease, the principal hereby authorizes Richard B. Herman & Company, Inc., as his agents to collect the rent due or to become due thereunder during the continuance of the same, or for any renewal or renewals thereof, and to deduct and retain five percent (5%) of the amount collected each month, and for this purpose to retain possession of the lease during said period. . . . In the event that, at any time while Lessee or any affiliate or successor to or assignee of Lessee is in possession of the demised premises . . ., the premises shall be sold to the Lessee, . . . Principal agrees to pay to Richard B. Herman & Company, Inc., a commission of 5% of the sale price . . . regardless of whether or not Principal shall have obligated himself to pay a commission on said sale to anyone else. The provisions of this clause shall be binding on the assignees, . . . [etc.] of the Principal. The foregoing authority shall be considered one coupled with an interest in Richard B. Herman & Company, Inc. . . ."

The leases were signed by Herman as agent and the tenant. At the bottom of the lease appeared the sentence: "The principal of Richard B. Herman & Company, Inc., having examined the above lease and agreements, hereby agrees to them and ratifies and approves of the same in all particulars." This was followed by the signature of James L. Stern and seal.

In October, 1962, Alex Sailor and Roslyn Sailor, his wife, purchased the property from Stern, the tenant being Roslyn Sailor, trading as Roslyn Sailor Boutique. The appellee, Herman, then sought a commission on the sale. Stern refused to pay, alleging that the sale was consummated through the effort of others and not through the effort of Herman. The plaintiff filed a complaint in assumpsit and the defendant filed an answer containing new matter. The plaintiff then filed a reply to new matter, then both parties moved for judgment on the pleadings.[1]

The complaint alleges that: "3. On or about October 23, 1959, plaintiff as agent for defendant entered into a certain Lease Agreement with Roslyn Sailor, a true and correct copy of which is attached hereto, made a part hereof, and marked Exhibit A. Defendant ratified and approved the same in writing on October 23, 1959, as appears therefrom.

"4. Said Lease Agreement in Section 37B thereof contains certain stipulations and agreements between plaintiff and defendant (the name 'Richard B. Herman & Company, Inc.' in Section 37 and in the signature being changed by Section 38 to read 'Richard B. Herman & Company') including an agreement that if at any time while Lessee should be in possession of the demised premises, having remained in possession uninterruptedly since the commencement of the term or any renewal or extension thereof or under any other agreement or arrangement, the premises should be sold

---

[1] Because we have motions for judgment on the pleadings from both parties, we must carefully delineate what pleadings we may consider. When we consider the plaintiff's motion for judgment on the pleadings, we may consider only the complaint and the answer containing new matter. *Luria Steel & T. Corp. v. Dittig*, 414 Pa. 197, 199 A. 2d 465 (1964). However, when we consider the defendant's motion for judgment on the pleadings, we must consider the complaint, the answer containing new matter, and the reply to new matter.

to the Lessee, the principal (meaning defendant) would pay to plaintiff a commission of 5% of the sale price, regardless of whether or not defendant should have obligated himself to pay a commission on said sale to anyone else."

Defendant, in his answer and new matter, denied any obligation to pay a commission to the plaintiff on the sale of the property as the plaintiff had nothing to do with the sale, and for the further reason (a) that the plaintiff acted as agent for John J. Shaw, Jr., and as an accommodation to Shaw; (b) that through error and mistake paragraph 37 (B) was not stricken from the printed form before being signed as no arrangement or agreement or discussion was made with the plaintiff with respect to any payment of any commissions in the event of any sale; (c) the premises were sold through the effort of a person other than the plaintiff; (d) all interest and authority of plaintiff under the lease was cancelled by defendant paying the plaintiff in advance the entire amount of the commission on the rent to which he was entitled.

The lower court entered judgment for the plaintiff and against the defendant. Defendant appealed and asked that the judgment be reversed and that judgment on the pleadings be granted in favor of the defendant and against the plaintiff. The appellant argues (1) the plaintiff admits that no agreement was made for the payment of any commission in the event of a sale, and defendant is not liable even though such a clause was in the printed lease; (2) the plaintiff's reply to defendant's new matter is vague, indefinite and not responsive, and under Pennsylvania Rules of Civil Procedure, admits facts pleaded by the defendant; (3) under the express terms of the lease, the broker was not entitled to commissions for the sale of the premises which did not result from his efforts, and that (a) any right which plaintiff may have had under the lease to receive

a commission in the event of the sale of the premises was ended when the defendant, in accordance with the terms of the lease, cancelled plaintiff's authority and interest and retook possession of the lease almost three years prior to the sale of the premises, and (b) section 37 (B) of the lease does not provide for a commission to be paid in event of the sale of a premises where plaintiff was not the procuring cause of the sale.

Appellant contends that the appellee has "admitted that the written provision in the lease dealing with the payment of commission in the event of a sale of the premises was never any part of the understanding or arrangement between the plaintiff and defendant".[2] The plaintiff-appellee, in his reply to defendant-appellant's new matter, made an averment that the matter contained therein was irrelevant. The averment in defendant's new matter being: "8. In October of 1959 the then tenant of the premises in question, John J. Shaw, Jr., was desirous of vacating the premises under his lease which still had to August 31, 1960, to run. On information and belief, defendant is informed said John J. Shaw, Jr., engaged Richard B. Herman, as agent to rent the property. Roslyn Sailor, trading as Roslyn Sailor Boutique was obtained by Shaw or Herman as a sublessee and defendant authorized plaintiff to execute a lease to that effect. On October 16, 1959, a lease was executed by plaintiff on behalf of John J. Shaw, whereby Roslyn Sailor, trading as Roslyn Sailor Boutique was made sublessee for the remainder of the unexpired term of Shaw's lease and which contained a printed provision that should the premises be sold to the lessee the principal would pay to plaintiff a commission of five (5%) percent. Said provision as to payment of commission should the premises be sold was entered into between plaintiff and his principal Shaw

---

[2] Appellant's brief, page 6.

and was not part of any understanding or agreement between plaintiff and defendant." And, the appellant further avers in new matter: "10. . . . Through error and mistake the said printed form of the lease contained a clause[3] which was not applicable to the arrangement made between the parties and should have been deleted before signing." There was a similar averment in defendant's answer: "4. . . . Through error and mistake, the said paragraph[3] was not stricken from the printed form before signing as no such arrangement or agreement or discussion was made with the plaintiff with respect to payment of any commission in the event of any sale. . . ."

The foregoing averments in defendant's answer and in new matter were not sufficient to meet pleading standards of Rules of Civil Procedure,[4] and the plaintiff-appellee was not required to answer, and therefore, he could not be deemed to have admitted what was not properly pleaded.

The appellant contends that through error and mistake the portion of paragraph 37 (B) was not stricken from the printed form. He does not point out by whose error or by whose mistake this was not done. The bald assertion of error and mistake falls far short of the requirement necessary for reformation of the contract. No place in the pleading is there any proper averment which would permit a court to allow evidence to show that the provision for payment of commission should be omitted. Pa. R. C. P. 1019(b). Without the proper averment, parol evidence could not be introduced to show that the provision as to payment of compensation was not part of any understanding or agreement between the parties. On the contrary, the lease agree-

---

[3] Paragraph 37(B) of lease agreement.

[4] Pa. R. C. P. 1019(b): "Averments of fraud or mistake shall be averred with particularity. Malice, intent, knowledge, and other conditions of mind may be averred generally."

280

ment shows careful consideration and draftsmanship. A portion of paragraph 37 (A) was stricken out as not applicable to the particular situation.[5]

Appellant further contends that under the provision in paragraph 37 (B) that provides for the principal reserving the right to cancel the agent's authority and to retake possession of the lease whereby the principal pays the amount of rental commission for the unexpired period of the lease, that this invocation of the lease agreement and compliance therewith extinguished the provision for the payment of a commission in the event of a sale of the property. There is no part of the lease agreement that would, under any conceivable notion, warrant this construction. The plain language of the provision for the payment of commission in the event of sale is to the contrary and unequivocal in its terms that a commission is due the agent, appellee, by the principal, appellant. The terms of this provision of the paragraph are unequivocal. The appellant, under the lease, had the right to make payment to the appellee in full of all claims on rental commission due under the lease. The appellee was compelled to accept payment in full of all commissions due on rentals when that provision was invoked by the appellant. The payment of the amount of commuted rental commission to which the appellee was entitled is not consideration for the release of the other claim for commission in the event of the sale of the property, particularly when the lease agreement does not provide for it to be such a release.

Appellant maintains that the appellee is not entitled to a commission in the event of the sale of the premises

---

[5] If the inclusion of 37 (B) was an error or mistake as Stern alleges, the mistake was unilateral in nature. The law is clear that a unilateral mistake will not void a contract. Restatement, Contracts, §502; *Marmon Phila. Co. v. Blocksom*, 103 Pa. Superior Ct. 542, 157 A. 510 (1931).

where the appellee was not the procuring cause of sale. The lease agreement specifically and unequivocally provides that: "Principal [appellant] agrees to pay to Richard B. Herman & Company, Inc., a commission of 5% of the sale price, without deduction for any other payments paid to or due Richard B. Herman & Company, Inc., hereunder, regardless of whether or not Principal shall have obligated himself to pay a commission on said sale to anyone else." There are many cases on the subject of real estate commissions, and when brokers are entitled to a commission, and what the requirements are to entitle a broker to commissions. It would serve no purpose for us to review the long line of cases. It is only necessary for us to point out the specific language in the lease agreement to show in the instant case that the broker is entitled to his commission whether he was the procuring cause of the sale or not when that sale was made to persons encompassed within the provisions of the agreement. The plain language of the agreement cannot be ignored.

Appellant says in his supplemental brief on reargument of this case that: "It is submitted that the clauses in the printed lease between the landlord and the tenant do not impose any obligation on the landlord unless he had agreed to the payment of a commission for the sale of the property. It is expressly provided in Section 35 of the lease that the lease sets forth '. . . all the promises, agreements, conditions, and understandings between the *lessor* and *lessee* . . .'. Nowhere is there any statement that the lease constitutes an agreement between the lessor and the broker. It is apparent that the contention of the Appellee is hanging upon the thread of fine print in the seven page lease agreement wherein appears the words 'lease and agreements'. The approval therein contained refers only to the lease agreement made between the landlord and the tenant which contains many clauses. . . . Her-

man was employed only to lease—not to sell the property . . . the real and legal issue in this case and that issue is whether the defendant, Stern, made any agreement to pay a commission in the event the tenant purchased the property. The fact that a statement to this effect is set forth in the fine print in the lease to which no reference or discussion was otherwise made is of no legal validity when admittedly no such agreement was made." (Emphasis in original)

Appellee was not a party to the contract, he signed it as agent for appellant, and the provisions in the lease agreement are between the landlord, appellant, and tenant, Roslyn Sailor, trading as Roslyn Sailor Boutique, and do not impose any obligation on the landlord, unless he, the landlord, appellant, agreed to the payment of a commission on the sale of the property in the event of a sale to those persons enumerated in paragraph 37 (B). In section 35 of the lease agreement, it is provided: ". . . all the promises, agreements, conditions and understandings between the lessor and lessee . . .", and no reference is made to any agreement between the lessor, appellant, and the broker, appellee. In paragraph 37 (B) of the lease agreement it is provided: "In consideration of the services of Richard B. Herman & Company, Inc., in securing the execution of the above lease, the principal hereby authorizes Richard B. Herman & Company, Inc., as his agents to collect the rent due or to become due thereunder during the continuance of the same, or for any renewal or renewals thereof, and to deduct and retain five per cent (5%) of the amount collected each month, and for this purpose to retain possession of the lease during said period. . . In the event that, at any time while Lessee or any affiliate or successor to or assignee of Lessee is in possession of the demised premises . . ., the premises shall be sold to the Lessee, . . . . Principal agrees to pay to Richard B. Herman & Company, Inc., a commission of 5% of

the sale price . . . regardless of whether or not Principal shall have obligated himself to pay a commission on said sale to anyone else. The provisions of this clause shall be binding on the assignees, . . . of the Principal. The foregoing authority shall be considered one coupled with an interest in Richard B. Herman & Company, Inc. . . ." The language in the foregoing paragraph 37 (B) would not impose liability on the lessor, appellant without more than the manner in which the lease agreement was executed, that is, by the appellee as agent for the appellant and the lessee, Roslyn Sailor, trading as Roslyn Sailor Boutique. The appellee was not a party to this lease agreement in his own right and therefore no liability was imposed upon the appellant to the appellee.

Appellee grounded his action on the foregoing provisions of paragraph 37 (B), and the following provision at the end of the lease agreement which provides: "The principal of Richard B. Herman & Company, Inc., having examined the above lease and agreements, hereby agrees to them and ratifies and approves of the same in all particulars. [Signed] James L. Stern (Seal) Philadelphia, Pa. Oct. 23, 1959". Appellant contends this ratification and approval refers only to the lease agreement made between the landlord and the tenant, which contains many clauses.

May the appellee recover a commission for the sale of the premises to the lessee from the appellant in the instant situation?

Appellant obligates himself in clear and unambiguous language, for a recited consideration from the broker, under seal, to pay specific commissions. That this particular agreement is contained in the lease agreement between the lessor, appellant and lessee, Sailor, is neither unusual nor legally objectionable. Its presence in the document can be only to create a binding agreement between principal, appellant and agent, ap-

pellee, who signed as agent, for those commissions. Otherwise, its existence cannot be rationally explained. There is no legal or logical reason for prohibiting the inclusion of such promise. It is a practical manner of handling an everyday business matter in an efficient and legally effective manner, avoiding the necessity of other separate contracts. The simple matter is that the lessor, appellant, adopts the lease agreement prepared by his agent with the lessee as his own contract with the agent. The adoption of the contract in clear, unambiguous language, under seal, for the purpose for which it was executed, cannot be denied. This situation is a fundamental problem in ordinary contract law. There are many instances in which a party not a signatory to the writing may recover on the instrument, e.g., a payee of a check or note, a grantee under a deed. In these instances, only the maker or grantor signs the writing. Here, the action is on appellant's promise to pay commissions as determined by that portion of the lease agreement between appellant and lessee and signed under seal by appellant. He is the party to be charged, and his signature to that promise is sufficient.

The lease agreement contains two agreements, as the ratification and approval of appellant suggests in the use of the word "agreements", that between the lessee and lessor, through his agent, and that between the lessor and his agent, which came into being upon signature by the lessor, appellant. When the lease agreement was tendered to the appellant for his approval, it consisted, in effect, of two offers: (1) an offer by the appellee to accept, in consideration of his services in procuring the lease (if appellant should approve it), a promise on the part of the appellant to pay the commission set forth in Section 37 (B) of the lease agreement: (2) an offer by the lessee to promise the payment of rent in return for the appellant's promise to

provide the lessee with the building. The second of these offers was an offer of a bilateral contract, the first an offer of a unilateral contract, analogous to the appellee's saying to the appellant: "If you will promise to pay me the commission set forth in section 37 (B), this lease is yours". When appellant ratified and approved the document, he accepted not only the lessee's offer, but also the appellee's offer.

Appellant maintains that the appellee was employed to lease the property and not to sell the property. This contention is not borne out by the plain, clear language of the document. Appellant also contends the provision for the payment of a commission on the sale of the property is in fine print in the document and, in addition, there had been no reference or discussion of the provision for the payment of a commission on the sale. An examination of the document reveals that with the exception of the part of the document that had been typed in on a typewriter and a rider, evidently prepared on a typewriter, all of the document provisions were of the same size and style type, and the provision appears directly over the end of the document containing the signatures.[6] Whether an oral discussion was had concerning the commission in the event a sale took place between the parties is of no moment in face of the written agreement in clear and unambiguous terms, there having been no allegation of fraud.

Judgment affirmed.

---

[6] This case is thus distinguished from *Cutler Corporation v. Latshaw*, 374 Pa. 1, 97 A. 2d 234 (1953), where a confession of judgment clause was hidden in a mass of small print, smaller than the bulk of the agreement and hidden on the reverse sheet of the agreement pages.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I join fully in the Court's holding that appellee has adequately established his contractual right to the disputed commission. I feel constrained, however, to add a few brief observations.

The principal issue confronting this Court is whether the court below erred in denying appellant's motion for judgment on the pleadings while at the same time granting appellee's similar motion. We are compelled, therefore, to concern ourselves exclusively with the pleadings,[1] and, more specifically, with whether appellee, while admitting for the purposes of his motion the truth of all appellant's allegations and the untruth of his own allegations which have been properly denied,[2] has established a right to enforcement of his claim.

While agreeing in principle, the dissent urges that this Court reverse the judgment of the court below on the ground that appellee, irrespective of appellant's answer, has failed to plead the "material facts" requisite to the averment of an enforceable contract. Since it is not contended by the majority that appellee's right to recovery may be predicated on a third party beneficiary theory,[3] it is necessary under the view there taken that the appellee have averred that he was a

---

[1] *Nederostek v. Endicott-Johnson*, 415 Pa. 136, 138, 202 A. 2d 72, 73 (1964); *Emery v. Metzner*, 191 Pa. Superior Ct. 440, 445. 156 A. 2d 627, 630 (1959); *Bogojavlensky v. Logan*, 181 Pa. Superior Ct. 312, 320, 124 A. 2d 412, 416-17 (1956); 2 A Anderson. Penna. Civil Practice §1034.21 (Supp. 1964); 1 Goodrich-Amram §§1034(a)-1, 1034(a)-3, 1034(b)-1 (1960).

[2] *Nederostek v. Endicott-Johnson*, 415 Pa. 136, 138, 202 A. 2d 72, 73 (1964); *Smith v. Brown-Borhek Co.*, 414 Pa. 325, 331, 200 A. 2d 398, 400 (1964); *Necho Coal Co. v. Denise Coal Co.*, 387 Pa. 567, 568, 128 A. 2d 771, 772 (1957); *Cary v. Lower Merion School Dist.*, 362 Pa. 310, 312, 66 A. 2d 762, 763 (1949); 1 Goodrich-Amram §1034(b)-1 (1960).

[3] On this point I venture no opinion as I see no need to reach the issue.

party to the written contract upon which his claim is predicated. And this, it is urged by the dissent, he has failed to do in that it is claimed that his sole manifestation of assent to the writing is his signature in his representative capacity. Concluding that appellee has not otherwise averred the manner by which his assent—in his individual capacity—was manifested, it is asserted that appellee has failed to aver that he was a party to the contract and properly to plead his claim.

The record supports no such conclusion. I believe, as does the majority, that appellee has adequately averred the manner of his assent, and, therefore, that he is a party to the contract upon which he claims.

The contract which appellee has averred is a unilateral contract. That much appears evident from the pleadings.[4] In such a contract, the very act of per-

---

[4] In his complaint, appellee averred that while acting in a representative capacity, as agent for appellant, he entered into a lease agreement with one Sailor, which lease agreement was ratified and approved in writing by appellant. He further alleged that the lease agreement contained, in a provision numbered paragraph 37(B), certain agreements between appellant and appellee in his individual capacity. Paragraph 37(B) of the written lease agreement, which appellee annexed to his complaint and which, thus, became part of his pleadings, see 1 Goodrich-Amram §1019(g)-2 (1960), provides: "In consideration of the services of . . . [appellee] in securing the execution of the above lease . . . [appellant] authorizes . . . [appellee] to collect the rent due . . . thereunder . . . and to deduct and retain five per cent (5%) of the amount collected each month . . . . In the event that . . . the premises shall be sold to the Lessee . . . [appellant] agrees to pay to . . . [appellee] a commission of 5% of the sale price . . . ."

In my view, the practical effect of appellee's incorporation of the lease agreement, and more particularly paragraph 37(B), is the averment that in consideration for appellant's promise to pay the therein provided for commissions, appellee secured the execution of a lease agreement under terms satisfactory to appellant. Whether the contract should be more properly characterized as a so-called reverse unilateral contract, see Restatement, Contracts, §57 (1932) ; 1 Williston, Contracts §71 (3d ed. 1957), is of little

forming that which has been requested by the offeror is both the consideration for the promise sought to be enforced and the acceptance of the offer for the contract. Restatement, Contracts, §§52, comment a, 56, comment a (1932); 1 Williston, Contracts, §65 (3d ed. 1957); see *Quilty v. New York Life Ins. Co.*, 153 Kan. 129, 109 P. 2d 215 (1941); *Gunnison v. Evans*, 136 Kan. 791, 18 P. 2d 191 (1933); *Lineaweaver's Estate*, 284 Pa. 384, 131 Atl. 378 (1925); 1 Corbin, Contracts §56 (1963). Moreover, as the objective manifestation of the acceptance of the offer for the contract, performance of the requested act is at the same time a manifestation of assent to it. See ibid.

It follows, then, in the instant case, that if appellee has adequately averred the performance of the requested act, the securing of a tenant under terms satisfactory to appellant, then he has properly averred that he is a party to the written contract upon which he claims. Cf. Restatement, Contracts, §12 (1932).

No searching examination of appellee's pleadings is necessary to discern the required averment of performance. In his complaint, appellee alleges the execution of a lease which was ratified and approved by appellant, a matter which is not disputed. The conclusion which one is necessarily drawn to is that appellee has, through this allegation, averred the performance of the act requested by appellant and, by necessary implication, his assent to the written contract.

---

moment. I find it conceptually more profitable to view any overtures made by the promisee of a unilateral contract as preliminary negotiations rather than an offer in that I am hard pressed to accept the notion that what is not enforceable as a promise may be fairly characterized as an "offer." But even viewed as a reverse unilateral contract, the result is unaffected. The incorporated lease may then be fairly viewed as an averment that appellee offered to secure the execution of a satisfactory lease agreement in consideration for certain commissions and that appellee accepted that offer by reason of his ratification of the lease agreement.

It remains to be determined whether, in light of appellant's answer, appellee was entitled to judgment on the pleadings.

Appellant contends, inter alia, (1) that the sales commission was not part of any understanding or agreement between the parties, and (2) that the provision with respect to the disputed commission was not deleted from the executed agreement by reason of mistake.[5]

As the majority has correctly stated, the allegation of mistake fails to conform to the rule that such allegations be pleaded with particularity. Pa. R. C. P. 1019(b); *Lefkowitz v. Hummel Furniture Co.*, 385 Pa. 244, 248, 122 A. 2d 802, 804 (1956); 1 Goodrich-Amram §1019(b)-1 (1960); 4 Standard Pennsylvania Practice §74 (1955). Lacking such particularity, appellant's unsupported allegation is a mere legal conclusion and as such may be disregarded. *Lefkowitz v. Hummel Furniture Co.*, supra; see *Architectural Tile Co. v. McSorley*, 311 Pa. 299, 166 Atl. 913 (1933); 4 Standard Pennsylvania Practice §125 (1955). It only remains to determine whether appellant's denial that the sales commission was a part of the understanding of the parties is a barrier to the relief granted appellee by the court below.

Appellant neither disputes the authenticity of the lease nor its execution. The lease agreement contains in clear and uncertain terms the provision upon which appellee seeks recovery. In light of these facts, the crux of appellant's averment can only be reduced to the contention that the agreement is legally unenforceable or that its inclusion was by reason of mistake. Neither averment, however, is sufficient to bar judgment on the pleadings. The latter allegation is insufficient for the reasons stated above. The former aver-

---

[5] Appellant raises a number of other contentions which were summarily and properly disposed of by the majority.

ment is no less a conclusion of law and obviously has no operative force once appellee has pleaded facts requisite to the enforcement of a contract. See, e.g., *Smith v. Brown-Borhek*, 414 Pa. 325, 330, 200 A. 2d 398, 400 (1964); *Bednarowicz v. Vetrone*, 400 Pa. 385, 387-88, 162 A. 2d 687, 688 (1960); *Robinson v. Philadelphia*, 400 Pa. 80, 82, 161 A. 2d 1, 2 (1960); *London v. Kingsley*, 368 Pa. 109, 111, 81 A. 2d 870, 871 (1951); *Architectural Tile Co. v. McSorley*, 311 Pa. 299, 166 Atl. 913 (1933); 4 Standard Pennsylvania Practice §125 (1955).

Appellant, no less than appellee, is under an obligation to plead material facts, which if established, would constitute a barrier to the enforcement of appellee's claim. Not having done so, appellant is not entitled to the trial of phantom issues. Having had the opportunity to raise an issue for trial and having failed to do so, appellant may not now complain of the granting of appellee's motion for judgment on the pleadings.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

We note at the outset that our determination in this matter must comply with the rule that a judgment on the pleadings can be granted only in cases that are free and clear from doubt. *Levin v. Blue Mountain Dairy, Inc.*, 407 Pa. 566, 180 A. 2d 908 (1962).

Herman, the plaintiff, alleged that, "as agent for defendant," Stern, he entered into a certain lease agreement with Roslyn Sailor, as tenant, a copy of which he attached to the complaint; that "defendant ratified and approved the same in writing;" that "Section 37B thereof contain[ed] certain stipulations and agreements between plaintiff and defendant," including an "agreement" that if the tenant purchased the property defendant would pay the plaintiff 5% of the sales price; that the tenant purchased the property; that plaintiff demanded that defendant pay him 5% of the sales price but that plaintiff refused.

That part of section 37(B) which plaintiff relies upon as forming the so-called "agreement" between plaintiff and defendant is, in its entirety, a small type printed clause appearing in the middle of the last page of a five page document prepared by plaintiff. At the top of the first page of the document, in large, bold type, appear the words "Lease Agreement." Section one of the document is captioned in the margin by the word "Parties." It states that it is an agreement "between Richard B. Herman & Company, Inc. Agent for James L. Stern of the City of Philadelphia, Pennsylvania, hereinafter called 'Lessor,' of the one part and Roslyn Sailor . . . of . . . Philadelphia, hereinafter called 'Lessee', of the other part." The document is signed and sealed on page five as follows: "Richard B. Herman & Company, Inc., Agent By Richard Herman" and "Roslyn Sailor." Then follows the clause: "The principal of Richard B. Herman & Company, Inc., having examined the above lease and agreements, hereby agrees to them and ratifies and approves of the same in all particulars." Beneath this clause appears the sealed signature of James L. Stern.

In his answer the defendant, inter alia, admitted signing and approving the lease but in new matter averred, inter alia, that the 5% clause "was not part of any understanding or agreement between plaintiff and defendant," and that "defendant agreed with the plaintiff to pay him only the regular real estate commission for leasing and no agreement was made to pay any additional amount in the event of a sale." Plaintiff refused to reply to the former averment, deeming it irrelevant, and denied the latter averment stating that "the agreement between the plaintiff and the defendant is as set forth in Section 37B." Plaintiff further replied that the "lease . . . contains the contract between the plaintiff and the defendant, upon which this suit was brought." Both parties moved for judgment on the pleadings; plaintiff's motion was granted.

Confining our analysis to the pleadings, as we must in such a case, it was error to enter judgment for plaintiff; he has not alleged "the material facts on which a cause of action . . . is based." Pa. R. C. P. 1019(a); 1 Goodrich-Amram, §§1019(a)(2), 1019(a)(6). The only basis for a cause of action which is even suggested by the allegations of the complaint is that defendant has committed a breach of a *written contract between him and defendant* which contract is attached to the complaint. There are absolutely no *allegations* which would support alternative causes based on quantum meruit, or promissory estoppel (no allegation of reliance), or third party beneficiary contract,[1] or oral bilateral contract, or oral offer by defendant for a unilateral contract which plaintiff accepted by perform-

---

[1] Even if he did so allege it is doubtful that he would fit within the generally prevailing view of a third party beneficiary. This much is apparently conceded by the majority.

"A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others (1) if he is a creditor of the promisee or of some other person and the contract calls for a performance by the promisor in satisfaction of the obligation; or (2) if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract. A third party may be included within both of these provisions at once, but need not be. One who is included within neither of them has no right, even though performance will incidentally benefit him." 4 Corbin Contracts, §776 (1951).

It requires no extensive analysis to ascertain that Herman is not a third party beneficiary of the Stern-Sailor lease. The obligation purported to be created by section 37(B) would run directly from appellant to appellee. Mrs. Sailor is involved in this obligation only to the extent that her purchase of the leased property is made the prerequisite to the generation of Stern's obligation to pay additional compensation. There is no intention, either expressed or implied to give plaintiff the benefit of any consideration flowing from appellant to Mrs. Sailor. See Restatement, Contracts, §133 (1932).

ance, or oral offer by plaintiff which defendant accepted in writing (no allegation of any oral communication), or contract implied from conduct (no allegation regarding conduct), or sealed promise (no allegation of delivery).[2] Confirming the limited factual ground of the complaint, plaintiff says in his brief: "Plaintiff in fact sued upon a written agreement for the payment of a commission in the event of a sale. There was no need to aver that there had been prior oral discussion resulting in the written agreement. Nor was there any need to deny the averment of defendant that in fact there had been no prior oral discussion."

Thus, it is plain beyond dispute that plaintiff is relying *solely* on the fact that the writing which he has incorporated into his pleadings and which defendant has admitted signing demonstrates in and of itself—without any other allegation—a contract between him and defendant. If the writing were a contract the case would be free and clear from doubt and would, therefore, warrant judgment on the pleadings for plaintiff; nevertheless, it is equally true that if the writing upon which plaintiff relies is not, in and of itself, a contract between plaintiff and defendant, then the defendant rather than the plaintiff is entitled to judgment on the pleadings.

"There must be at least two parties in a contract. . . ." Restatement, Contracts, §15 (1932).[3] "The re-

---

[2] Restatement, Contracts, §§95, 101, 102 (1932).

[3] "At common law no one could maintain an action upon a contract to which he was not a party. This rule is well established in this country, and is recognized by both the state and federal courts." *Howes v. Scott*, 224 Pa. 7, 10, 73 Atl. 186, 187 (1909). This statement by Judge MESTREZAT more than half a century ago still expresses the foremost qualification which one must have in order to assert contractual rights. As a general rule only parties to a contract may enforce it and strangers to a contract acquire no rights thereunder. Williston on Contracts §347 (Jaeger ed. 1959) ; see 1 Corbin Contracts, §124 (1963). As noted in n. 1, supra, and the text thereat the exception to this rule for third party beneficiaries is not applicable here.

quirements of the law for the formation of an informal contract are: (a) A promisor and a promisee each of whom has legal capacity to act as such in the proposed contract; (b) A manifestation of assent by the parties who form the contract to the terms thereof, and by every promisor to the consideration for his promise. ... (c) A sufficient consideration. ..." Id. §19. Now it is plain that in one aspect the writing incorporated by plaintiff in his complaint meets the above requirements imposed by law for the existence of contract. But in that aspect it is a contract between *plaintiff as agent for defendant-landlord,* on the one part, and Roslyn Sailor, tenant, on the other part. The plaintiff signing as agent for defendant, has manifested assent to the terms of the lease on behalf of defendant, and the tenant, by her signature, has done the same on her own behalf. In addition, the defendant, has manifested his assent to the terms of the lease negotiated in his behalf by plaintiff with the tenant.

Plaintiff asserts that within this written contract, negotiated and executed by him with the tenant on behalf of the defendant, there is another written contract—the one upon which he is suing. Allegedly, this contract is section 37(B). But section 37(B), while it states a promisor, a promisee, and consideration, it does not have *two parties.* There is no indication that plaintiff is a party to it, and thus there is not the required "manifestation of assent by the *parties who form the contract* to the terms thereof, and by *every promisor to the consideration for his promise."* Id. Even if the defendant's signature beneath the lease ratification clause (which in ordinary experience is only for the purpose of satisfying the statute of frauds, and to relieve the agent of any personal liability), can be taken as defendant's manifestation of assent to the *brokerage commissions* clause in section 37(B), there is no similar manifestation on the *writing by plaintiff.* Plain-

tiff has signed the writing only *as agent* for defendant; surely that cannot satisfy the requirement of a manifestation of assent to the terms of a compensation agreement wherein plaintiff and defendant are *parties on their own parts.* In short, section 37(B) and defendant's signature constitutes, at most, *a signed promise reciting consideration.* But, under the law that alone cannot constitute a contract between defendant and plaintiff. Plaintiff has failed to allege how he is a party to the promise—either by showing that it was an offer which he accepted or an acceptance of an offer made by him.

The majority's analogy to a suit on a deed or note signed only by one party is erroneous. In order to make the signed writing a contractual obligation, there must be a delivery with the requisite intent. See Restatement, Contracts, §§95, 101, 102 (1932). *In the complaint* there is no allegation of delivery or facts from which a delivery may be inferred. By supplying missing allegations in order to sustain the judgment on the pleadings the majority has deprived the defendant the right to deny such supplied allegations—which denial would defeat the entry of judgment on the pleadings.[4]

This analysis of the requirements of the formation of a contract is not a mere academic exercise, for it is defendant's contention that section 37(B) did not form any part of any contract between plaintiff and defendant. Perhaps it is free and clear from doubt that it is a signed, written promise but it is also free and clear from doubt that it is not a contract between plaintiff and defendant. Defendant's signature *may be strong evidence* that it is part of such a contract but plaintiff

---

[4] "A contract under seal or other sealed instrument does not become operative as such until the party executing it does some overt act indicating that he intends it to be immediately operative. This act is called 'delivery.'" 1A Corbin, Contracts §244 (1963).

must allege and prove the contract—either by alleging and proving that the promise was a written acceptance of some form of offer by plaintiff or that it was a written offer for a unilateral contract which plaintiff accepted by performance, or that it was a written and sealed promise which was delivered to plaintiff. But here we are reviewing a judgment on the pleadings and one searches in vain to find the required allegations.

That plaintiff has not alleged any contract between him and defendant is supported by *Smith v. Watters*, 38 Ohio App. 437, 176 N.E. 466 (1931). There the question was whether the Ohio Statute of Frauds, requiring brokerage contracts to be in writing, was satisfied. The writing adduced by the plaintiff-broker in that case was in one aspect a contract between defendant-principal in that case and one Dales for an exchange of properties owned by them. Also, "in that contract . . . there was a provision . . . that [defendant-principal] was to pay a commission to the plaintiff-[broker]." The court said: "The contract which was signed by the defendant-[principal] was not a contract with the plaintiff-[broker] but with Dales." However, the writing was considered a sufficient memorandum under the Ohio Statute of Frauds.

It is instructive to note how the broker in *Smith v. Watters* proved a contract with the defendant. In the opinion of the court: "The oral evidence discloses . . . that . . . plaintiff negotiated . . . with Dales, and finally had a lawyer prepare a contract for the exchange by Dales of his property for the five parcels of property of the defendant and then took said contract to the defendant and called her attention to the fact that it was provided in said contract that the defendant should pay to the plaintiff a stipulated real estate commission; that defendant, knowing that said contract contained that provision, signed the contract, with the understanding that the plaintiff would present said contract so signed by the defendant to said Dales and

procure his agreement and signature thereto, which plaintiff did. . . ." It is clear that in the *Smith* case, unlike the instant action, the broker proved a contractual arrangement outside the writing with his principal by proving conduct and verbal exchanges from which the elements of a contract could be inferred, and the integration found to be a memorandum.

In his supplemental brief on reargument plaintiff attempts to supply allegations missing in his pleadings by arguing about how an offer and acceptance can be inferred from a tender of the document and other circumstances and conduct surrounding defendant's signing of the writing. But a brief on reargument is not a substitute for a pleading. Again, it cannot be emphasized too strongly that we are confronted with a judgment on the pleadings; in his pleadings plaintiff rests solely on the allegation of the existence of a signed writing constituting a contract between plaintiff and defendant. There are no allegations regarding the circumstances or conduct surrounding the signing of the writing. Accordingly, the majority's reliance on such unalleged circumstances is misplaced; at the same time it indicates that the actual allegations are insufficient.

In addition to the inadequacy of his pleadings, plaintiff's suggestion in his brief that the tendering of the writing to his principal was an offer to contract regarding fees, which the defendant accepted by signing the writing, is of dubious legal validity. It needs no citation of authority to support the rule that an agent owes his principal a duty of loyalty and must deal with him in good faith. It also needs no citation of authority to support the agent's right to engage in arm's length bargaining with his principal on the matter of his compensation. But an agent *cannot* wear both hats at once. An agent cannot rightly argue that in handing to his principal for his signature a document which on its face purports to be a lease, executed by him as agent for the principal, he is at the same

time offering to enter into an arm's length contract regarding his fee. Plaintiff argues that handing such a document to his principal is "analogous to the plaintiff's *saying* to the defendant: 'If you will promise to pay me the commissions set forth in section 37 (B), this lease is yours.'" It is obvious that the mere act of handing such a document to the principal is very different from expressly and unequivocally calling the principal's attention to the fact that the broker is bargaining about fees as was done in the *Smith* case. An agent's duty of loyalty and good faith would require him to do more than merely insert his offer in the main body of a lease agreement which he has obtained and signed as agent for his principal.[5] It might be quite reasonable to bind the principal with respect to promises made to the tenant in a lease which he has failed to read. But it is not at all reasonable to hold that he should have reasonably understood without explicit disclosure, which is not here alleged, that a document such as that involved in the instant case was also an offer by his agent regarding fees. Requiring agents to bargain at arm's length for their compensation in a manner distinguishable from the performance of their fiduciary duties is not burdensome and is in accord with sound agency principles.

But irrespective of the soundness of the propositions advanced in plaintiff's *brief* the plain fact remains that his *complaint* does not allege facts which if proven would show a contract between him and defendant. There is no allegation in the complaint of a promise made to the plaintiff by the defendant. There is no allegation of the delivery of the instrument so as to make it operative. Since the adequacy of his complaint depends entirely upon the existence of such a contract he should not have been granted judgment on

---

[5] Paragraph three of the complaint reads: ". . . plaintiff as agent for defendant entered into a certain Lease. . . ."

the pleadings. The case should be remanded with leave to plaintiff to amend; and in default of amendment, judgment be rendered for defendant.

I dissent.

Mr. Justice JONES joins in this dissenting opinion.

DISSENTING OPINION BY MR. JUSTICE EAGEN:

As I read the record in this case, plaintiff's cause of action is based upon the existence of a reverse unilateral contract. While no Pennsylvania authority has thus far recognized the validity of such a contract, and the theory has been ignored in at least two other jurisdictions (see, *Warner and Co. v. Brua,* 33 Ohio App. 84, 168 N.E. 571 (1929), and *Tomars v. Sanford Holding Corporation,* 232 App. Div. 169, 249 N.Y. Supp. 982 (1931))[1], there is responsible authority supporting the validity of such obligations. See, 1 Williston, Contracts §71 (3d ed. 1957).

Assuming arguendo that such a contract should be recognized in Pennsylvania, the question still remains: Does the lease agreement involved satisfy its requirements. I conclude that it does not.

Section 57 of the Restatement of Contracts states that a contract of this type is not complete until the offeree (the defendant) makes the promise requested. Section 58 further requires that the acceptance or promise be unequivocal. The mere fact that something is inserted into a lease agreement does not in itself constitute an acceptance. See, *Cutler Corp. v. Latshaw,* 374 Pa. 1, 97 A. 2d 234 (1953). For the acceptance to be binding in the present case, there must be present a definite acceptance of the demand for additional commissions phrased in unequivocal terms. On this point, the lease agreement is fatally defective. Nowhere

---

[1] Both courts apparently considered agreements similar to the present one as without effect because they lacked consideration on the part of the broker at the time they were executed.

300

therein does the defendant unequivocally accept plaintiff's unilateral demand. In view of the type of promise asserted, the signature of the defendant can hardly be considered an unequivocal acceptance. This is particularly so where, as in the present case, the alleged acceptance is incorporated or "slipped" into the agreement between the lessor and the third party.

I would, therefore, reverse the judgment entered in the court below and enter judgment in favor of the defendant.

I further agree with Mr. Justice Cohen's observations concerning the absence of an adequate allegation of delivery. This, in itself, defeats the right of the plaintiff to judgment on the pleadings.

Mr. Justice Jones joins in this dissenting opinion.